UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
FORT PIERCE DIVISION

ALEKSEY TOVARIAN,

    Plaintiff,

Case No. 2:24-cv-14037-AMC

v.

KATERYNA PANOVA, *et ano.*,

    Defendants.

_____/

**DEFENDANTS' MOTION TO DISMISS AND FOR AWARD OF ATTORNEY'S FEES**

Pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, Defendants Kateryna Panova and Rubic, LLC file this motion to dismiss the state-court Complaint. [ECF No. 1-2]. As grounds, Defendants state:

**Introduction and Background**

This is a Strategic Lawsuit Against Public Participation involving Defendant Rubic's reporting on a matter of public concern. As referenced in the attached translation of the subject article, Rubic was engaged in extensive reporting through various sources regarding the business model of a company called "TeachBK," which is purportedly owned by two Russian asylum-seekers who provide "immigration services" to other Russian-speaking asylum-seekers despite not being lawyers. A true and correct copy of a certified translation of the subject article is attached as Exhibit 1 to the Declaration of James M. Slater ("Slater Decl."), which is being filed contemporaneously with this motion.

As depicted in the subject article, Defendant Rubic's reporting and newsgathering on TeachBK and its practices included speaking to several sources, many of whom provided text messages and recordings to substantiate their claims, which Rubic included in its report.

One such source was Maksim Kharitonov. He was not named in the article, but he provided Rubic with a WhatsApp voice memo that was sent to him by Ilya Kiselev, one of TeachBK's founders. *See* Declaration of Maksim Kharitonov ("Kharitonov Decl."), which is being filed contemporaneously with this motion. The content of Mr. Kiselev's recording was referenced in the subject article, in which Rubic journalist Nata Polynkova wrote: "Rubic obtained an audio recording of a phone conversation where [TeachBK's] founder, Ilya Kiselev, explains how his business is structured." Slater Decl. Ex. 1 at 8. According to the audio recording provided by Mr. Kharitonov, Rubic learned that TeachBK would guide asylum speakers to a lawyer who would then charge for a consultation and then "spit[] out" a percentage of the consultation fee to TeachBK's owners, who are not lawyers. *Id.*

Plaintiff Aleksey Tovarian is a California-based Russian-speaking immigration lawyer licensed to practice law in California. [ECF No. 1-2 ¶¶ 2–3]. He has been featured prominently in TeachBK's social media where he provides immigration advice to TeachBK's followers:





*See* Slater Decl. ¶¶ 4–7.[1] According to a search of TeachBK's YouTube channel, he has appeared in more than a hundred TeachBK videos in the last few years. *Id.* at Ex. 1 at 9 & Ex. 2.

Given Mr. Kiselev's recorded statement in which he confirmed that TeachBK receives a fee for sending inquiries to lawyers, Rubic's reporter sought to understand Plaintiff's connection to the company: "What's the relationship between [Plaintiff] and this company? We're not sure." *Id.* at Ex. 1 at 9. The author explained that she had tried to reach Plaintiff for comment but received no response. *Id.* The author then shared a text message between Plaintiff and one of his clients, where the client referred to Plaintiff as TeachBK's "partner." *Id.* at Ex. 1 at 9.

Plaintiff asserts that he was defamed because he believes a statement in the subject article about a lawyer giving TeachBK a referral fee, or "kickback," is about him, and if so, that it is false. For the reasons articulated below, his claims in the Complaint fail.

---

[1] Defendants ask that the Court take judicial notice of the TeachBK YouTube channel, as depicted in screenshots in the body of this motion and the accompanying Slater Declaration for the limited purpose of illustrating that Plaintiff is actively featured in TeachBK's content. *See Barron v. Snyder's-Lance, Inc.*, 2015 WL 11182066, at *4 (S.D. Fla. March 20, 2015) (taking notice of prices contained in internet screenshots "insofar as they reflect a narrow and specific fact: the price of a certain product on a certain website on a certain date").

**Argument**

Federal courts recognize that early dismissal of defamation claims is particularly appropriate because "there is a powerful interest in ensuring that free speech is not unduly burdened by the necessity of defending against expensive yet groundless litigation." *Michel v. NYP Holdings*, 816 F.3d 686, 702 (11th Cir. 2016). *See also Karp v. Miami Herald Publ'g Co.*, 359 So. 2d 580, 581 (Fla. 3d DCA 1978) (noting that pretrial disposition, where possible, is especially important in defamation cases because of the "chilling effect" such cases have on the exercise of First Amendment rights).

Here, the Complaint should be dismissed because it is both procedurally and substantively deficient. It fails to provide fair notice to Defendants of the claims against them. It cannot state a claim against Ms. Panova, who is not the author of the subject article and is being sued merely because she is the owner of the publication. And under applicable law—which Defendants argue is California law—Plaintiff cannot show that the statement was defamatory, that he suffered special damages, or that the statement was made with reckless disregard for the truth.

**I.     The Complaint is Procedurally Deficient and Fails to State a Claim**

Under Rule 81(c)(1), the Federal Rules of Civil Procedure "apply to a civil action after it is removed from a state court." Fed. R. Civ. P. 81(c)(1). Thus, the pleading standard required to survive Rule 12(b)(6), as set forth by the United States Supreme Court in *Iqbal* and *Twombly* applies to Plaintiff's complaint upon removal. *See, e.g.*, *Fluid Control Specialties, Inc. v. Watts Water Techs., Inc.*, 2019 WL 12304383, at *1 (M.D. Fla. Dec. 3, 2019).

Rule 8(a) requires a pleading contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). To survive a motion to dismiss, a complaint must "contain sufficient factual matter, accepted as true, to 'state a claim to relief that

is plausible on its face.'" *Ashcroft v. Iqbal*, 566 U.S. 662, 678 (2009) (citing id). This requires "more than a sheer possibility" that a plaintiff can state a claim. Id. at 679. When considering a Rule 12(b)(6) motion, the Court must accept all factual allegations in the complaint as true and construe them in the light most favorable to the plaintiff. *Pielage v. McConnell*, 516 F.3d 1282, 1284 (11th Cir. 2008). That said, "legal conclusions without adequate factual support" or "[f]ormulaic recitations of the elements of a claim" are not entitled to those presumptions, and constitute grounds to dismiss. *Mamani v. Berzain*, 654 F.3d 1148, 1153 (11th Cir. 2011). Plaintiff bears the burden of proof for each stated claim.

### A. Plaintiff improperly "lumps" Defendants together.

In the Complaint, Plaintiff alleges that "the DEFENDANTS"—Ms. Panova and her publication Rubic—"have defamed PLAINTIFF in an online article accusing and falsely stating that PLAINTIFF is engaged in kickbacks from TeachBK for alleged clients which TeachBK allegedly refers." [ECF No. 1-2 ¶ 7] (capitalization in original). Plaintiff further claims that "DEFENDANTS wrongly suggests [sic] that the PLAINTIFF is in violation of law and engaged in unethical conduct." [*Id.*]. Repeatedly, Plaintiff asserts that "DEFENDANTS" have committed these purported legal violations. But the Complaint fails to articulate facts that sufficiently state which Defendant is alleged to have committed which act. The failure to identify claims "with sufficient clarity to enable a defendant to frame a responsive pleading constitutes a 'shotgun pleading' that violates Rule 8(a)(2)." *Rodriguez v. Carrot Express Midtown, LLC*, 2019 WL 7293360, at *3 (S.D. Fla. Dec. 30, 2019). An impermissible shotgun pleading "assert[s] multiple claims against multiple defendants without specifying which of the defendants are responsible for which acts or omissions." *See Weiland v. Palm Beach Cty. Sheriff's Office*, 792 F.3d 1313, 1321-23 (11th Cir. 2015); *see also Lampkin-Asam v. Volusia County Sch. Bd.*, 261 F. App'x 274, 277

(11th Cir. 2008) (same); *see also Davis v. Staramba Corp.*, 2015 WL 12838807, at *2 (M.D. Fla. Nov. 6, 2015) (no "fair notice" when allegations refer to "Defendant" or "Defendants" without identifying the specific individual or combination of defendants to which the allegation pertains). For that reason alone, the Complaint should be dismissed.

### B. The Complaint fails to allege, and cannot allege, that Ms. Panova is liable for defamation.

Although Plaintiff asserts in Counts I and II that Ms. Panova committed defamation per quo and per se by "falsely stating that PLAINTIFF is engaged in kickbacks…" <u>Nata Polynkova</u> is the author of the subject article, not Ms. Panova. *See* Slater Decl. at Ex. 1. The failure to identify any conduct committed by Ms. Panova is fatal to Plaintiff's defamation claims.

Further, Plaintiff cannot establish publication by Ms. Panova simply because of her owing Rubic. The element of publication—that "the defendant published a false statement" about the plaintiff—is essential to a defamation claim. *Corsi v. Newsmax Media, Inc.*, 519 F. Supp. 3d 1110, 1120 (S.D. Fla. 2021); *TransUnion LLC v. Ramirez*, 594 U.S. 413, 434, 141 S. Ct. 2190, 2209, 210 L. Ed. 2d 568 (2021) ("Publication is 'essential to liability' in a suit for defamation.") "[B]ecause the publication of a statement is a necessary element in a defamation action, only one who publishes" the allegedly defamatory material "can be subject to this form of tort liability." *Zimmerman v. Buttigieg*, 2021 WL 694797, at *8 (M.D. Fla. Feb. 23, 2021); *see also Corsi*, 519 F. Supp. 3d 1110 (dismissing defamation claims for failure to plausibly plead publication element); *Five for Entm't S.A. v. Rodriguez*, 877 F. Supp. 2d 1321, 1329 (S.D. Fla. 2012) (dismissing defamation claim that did not allege publication as to a particular defendant). Liability for publication cannot attach absent direct, participatory involvement in the drafting, editing, or dissemination of the allegedly defamatory material. *See Klayman v. City Pages*, 2015 WL 1546173, at *8 (M.D. Fla. Apr. 3, 2015), *aff'd*, 650 F. App'x 744 (11th Cir. 2016). Because

Plaintiff has not pleaded any facts that demonstrate Ms. Panova's direct involvement or facts sufficient to suggest an alter ego theory, and because the article's byline contradicts Plaintiff's claim that Ms. Panova wrote the article, Counts I and II against Ms. Panova should be dismissed.

## II. The Allegations are Substantively Deficient.

On top of failing to plausibly plead his claims, Plaintiff also cannot demonstrate that the statement is defamatory, that he has suffered special damages for his per quod claims, or that Defendants' alleged conduct rose to the requisite level of fault—actual malice.

### A. California law applies as the state with the most significant relationship.

Sitting in diversity, this Court should "apply the conflict-of-laws rules of the forum state." *Grupo Televisa, S.A. v. Telemundo Commc'ns Grp., Inc.*, 485 F.3d 1233, 1240 (11th Cir. 2007). When faced with a conflict of laws in a torts case, Florida courts apply the "most significant relationship" test outlined in the Restatement (Second) of Conflict of Laws § 145. *Id.* Under that test courts must consider with four factors respect to each claim: "(1) the place where the injury occurred; (2) the place where the conduct causing the injury occurred; (3) the domicile, residence, nationality, place of incorporation, and place of business of the parties; and (4) the place where the relationship, if any, between the parties is centered." *Nix v. ESPN, Inc.*, 772 F. App'x 807, 809 (11th Cir. 2019)*.* "These factors are considered according to their relative importance with respect to the particular issue." *Michel v. NYP Holdings, Inc.*, 816 F.3d 686, 694 (11th Cir. 2016) (internal quotation marks omitted). If those factors are not enough to guide a court to draw a conclusion, it may then look to the seven factors outlined in the Restatement (Second) of Conflict of Laws § 6.2 *Grupo Televisa*, 485 F.3d at 1240. Those factors are not exclusive and a court may give different weight to particular factors, or consider other factors in deciding a question of choice of law. *Nix*, 772 F. App'x at 809 (citing Restatement (Second) of Conflict of Laws § 6 (1971)).

The Restatement (Second) of Conflict of Laws § 150 also states that "when defamatory information is published in more than one state, the 'state of most significant relationship' will usually be the state where the plaintiff was domiciled or had its principal place of business at the time." *Nix*, 772 F. App'x at 810. Courts give special weight to this factor "on the notion that the plaintiff will usually suffer greatest injury—by reason of loss of reputation—in the state of domicile or principal place of business." *Id.* Although at times the state of domicile is not where the most harm is felt. *See, e.g.*, *Michel*, 816 F.3d at 694 (applying New York law in a defamation suit brought by a Florida resident in part because "the article was published in New York, regarding an event that took place in New York, and that allegedly caused harm to [plaintiff's] business interests in New York," and "[all defendants] are domiciled in New York.").

Here, Plaintiff is a California attorney and resident. [ECF No. 1-2 ¶¶ 2–3]. He asserts that the defamatory statement was published on the internet is "World Wide [sic], including Martin County" [*Id.* ¶ 43], and it would target his clients "in the United States and in the World [sic]" [*Id.* ¶ 48]. He asserts that the statement, if true, would affect his California law license, which prohibits him from receiving or providing referral fees—or as he describes them, kickbacks—from nonlawyers. [*Id.* ¶¶ 27–28] (citing California Rule of State Bar 8.4(c)). Because Plaintiff alleges that the statement was published on the internet "World Wide" and not just in Florida, and because he alleges that the harm would directly affect his ability to practice law as a California attorney, the Court should find that the state of the most significant relationship here is California. Thus, California law should apply.

### B. Plaintiff mistranslates the subject statement to make it appear "of and concerning" him.

To begin, Plaintiff asserts he was defamed by a statement in Rubic's article that asserts that TeachBK—a company owned by nonlawyers that purports to provide immigration advice to Russian-speaking prospective immigrants—sends immigrants to a single lawyer "for which [PLAINTIFF] received a percentage." [*See* ECF No. 1-2 ¶ 25] (brackets in original).

The brackets are telling. Plaintiff's uncertified translation of the Russian-language article suggests that *he* is the one who received a percentage, when the original Russian uses the third-person plural conjugation of the verb "to receive." The attached certified translation is clear that TeachBK is receiving a percentage, not the lawyer: "They offer paid sponsors and refer immigrants to a single 'immigration attorney' for a fee." Slater Decl. at Ex. 1 at 1. Plaintiff's failure to attach a certified translation of the article so that the Court can review it in context is fatal. *Fortson v. Colangelo*, 434 F. Supp. 2d 1369, 1379–80 (S.D. Fla. 2006) ("context is paramount"); *Murray v. Pronto Installations, Inc.*, 2020 WL 6728812, at *6 (M.D. Fla. Nov. 16, 2020) (finding that the context of the statements suggested they could not impute conduct "incompatible with the essential functions of [his job], when the context of the statements is considered.") (quoting *Scobie v. Taylor*, 2013 WL 3776270, at *3 (S.D. Fla. July 17, 2013). Instead, he seeks to have the Court adjudicate his claims premised on a mistranslated quote taken out of context. That is grounds for dismissal alone. *Issa v. Applegate*, 31 Cal. App. 5th 689, 713–14 (Cal. App. 2019) ("Defamation actions cannot be based on snippets taken out of context.").

Further, under California law, "Plaintiffs who sue for defamation must show that the allegedly libelous statements were made 'of and concerning' them, *i.e.*, referred to them personally." *Barger v. Playboy Enters.*, 564 F. Supp. 1151, 1153 (N.D. Cal. 1983).[2] A libel plaintiff "cannot constitutionally establish liability unless he proves that the contested statements

---

[2] The same is true under Florida law, should the Court find it applies instead. *Thomas v. Jacksonville Television, Inc.*, 699 So. 2d 800, 802 (Fla. 1st DCA 1997).

9

are 'of and concerning' him either by name or by 'clear implication.'" *Ferlauto v. Hamsher*, 74 Cal. App. 4th 1394, 1404 (1999). "In California, whether statements can be reasonably interpreted as referring to [the] plaintiff[ ] is a question of law for the court . . . . If there is no express reference to the plaintiff in a defamation statement, the claim will fail unless the statement refers to the plaintiff by reasonable implication." *SDV/ACCI, Inc. v. AT&T Corp.*, 522 F.3d 955, 959 (9th Cir. 2008). This requirement prevents complaints that nonspecific statements have harmed someone even though they are not the direct object of the statement. *Blatty v. N.Y. Times Co.*, 42 Cal. 3d 1033, 1044 (Cal. 1986).

Plaintiff cannot demonstrate that the statement is "of and concerning" him because the statement is about fees that TeachBK receives. Nothing in the translated statement or article suggests that Plaintiff is paying a kickback or receiving a referral fee from a nonlawyer. *Kaelin v. Globe Comm. Corp.*, 162 F.3d 1036, 1039 (9th Cir. 1998) ("a defamatory meaning must be found, if at all, in a reading of the publication as a whole"). In fact, Rubic questions Plaintiff's role with TeachBK: "What's the relationship between [Plaintiff] and this company? We're not sure." Slater Decl. at Ex. 1 at 9.

Because Plaintiff is not the "direct object of criticism," Blatty, 42 Cal. 3d at 1044, the statement is not plausibly "of and concerning" him. As explained below, even if the Court disagrees, Plaintiff cannot show the requisite degree of fault to proceed on his claims.

### C. Plaintiff cannot demonstrate that the statement constitutes defamation per se because it relates to matters that are not common knowledge.

Counts II and IV for defamation per se fail because a reader would need "knowledge of specific facts and circumstances, extrinsic to the publication, which are not matters of common knowledge rationally attributable to all reasonable persons" to understand that Plaintiff's allegation that he received or paid money to a nonlawyer for a referral violates California State Bar Rules.

10

*Barnes-Hind, Inc. v. Superior Ct.*, 181 Cal. App. 3d 377, 387 (Cal. App. 1986). The gravamen of a defamation per se claim is that no extrinsic evidence or knowledge is necessary to conclude the statement is libelous. *Yow v. Nat'l Enquirer, Inc.*, 550 F. Supp. 2d 1179, 1183 (E.D. Cal. 2008)

Under California law, when a defamatory statement is "ambiguous, innocent on its face, or only defamatory in the light of extrinsic circumstances," a plaintiff "must plead and prove that as used, the words had a particular meaning, or 'innuendo,' which makes them defamatory." *RingCentral, Inc. v. Nextiva, Inc.*, 2020 WL 13920092, at *2 (N.D. Cal. Apr. 23, 2020) (quoting *Smith v. Maldonado*, 72 Cal. App. 4th 637, 645 (Cal. App. 1999)). A libel plaintiff "must also allege the extrinsic circumstances which show [that] the third person reasonably understood [the statement] in its derogatory sense ...." *Smith*, 72 Cal. App. 4th at 646.

Because an ordinary reader would not have the specialized knowledge of the attorney ethics rules, Plaintiff's failure to allege circumstances showing that a reader of the subject article would have reasonably understood the alleged defamatory meaning of the statement, Counts II and IV should be dismissed.[3]

### D. Plaintiff has not pleaded special damages for his per quod claims.[4]

---

[3] Florida law compels the same conclusion. *Mac Isaac v. Twitter, Inc.*, 557 F. Supp. 3d 1251, 1258 (S.D. Fla. 2021) ("in determining whether a publication is defamatory per se, consideration is given only to the 'four corners' of the publication and the language used should be interpreted as the 'common mind' would normally understand it") (internal quotations and citations omitted).

[4] Plaintiff also suggests that he has a defamation by implication claim in the Complaint. [ECF No. 1-2 ¶ 17]. He does not explain the basis for this claim, and it is not clear how it would jive with Plaintiff's contention that the statement is false, as defamation by implication must be based on a true statement. As the Florida Supreme Court explained in *Jews for Jesus, Inc. v. Rapp*, a defamation by implication claim occurs when a defendant's factual statements are "literally true," but "the defendant juxtaposes a series of facts so as to imply a defamatory connection between them, or creates a defamatory implication by omitting facts." 997 So. 2d 1098, 1108 (Fla. 2008); *White v. Fraternal Order of Police*, 909 F.2d 512, 520 (D.C. Cir. 1990) (defamation by implication possible where "the communication, by the particular manner or language in which the true facts are conveyed, supplies additional, affirmative evidence suggesting that the defendant intends or endorses the defamatory inference").

Counts I and III, for defamation per quod, should also be dismissed for failure to plead special damages. Unlike defamation per se claims, defamation per quod requires proof of special damages both under California and Florida law. *Wolfson v. Kirk*, 273 So. 2d 774, 777 (Fla. 4th DCA 1973); *Yow*, 550 F. Supp. 2d at 1183.

Under California law, a business loss "as a result of damage to [the plaintiff's] reputation" is "the classical definition of special damage in a defamation case," and "[i]t is clear that under California law, a loss of clients following defamation is evidence of recoverable special damages." *Gallagher v. Philipps*, 563 F. Supp. 3d 1048, 1081 (S.D. Cal. 2021). Thus, to sustain his per quod claims, whatever the applicable state's law, Plaintiff must plead and prove special damages.

In the Complaint, Plaintiff merely suggests that the subject article "intend[s]" to target his clients to "hinder" his ability to market his services to Russian-speaking clients, who are a primary source of Plaintiff's income. [ECF No. 1-2 ¶¶ 29–30]. But simply because the article *could* affect Plaintiff's business is not enough to show that he has suffered special damages. Without such a showing, Counts I and III fail to satisfy a requisite element and must be dismissed.

### E. Plaintiff cannot show that Defendants' alleged conduct satisfied the requisite degree of fault.

Finally, all claims should be dismissed because Plaintiff is a limited-purpose public figure for purposes of the controversy addressed in the publication—specifically, that TeachBK was scamming Russian and Ukrainian immigrants in the wake of the Russian invasion of Ukraine. Moreover, even if the Court were to conclude that a reasonable reader of the article—in its entire context—would believe that the lawyer referenced in the statement was Plaintiff, Plaintiff cannot show that Defendants acted with reckless disregard. The reason is simple. Rubic relied on a source with personal knowledge and a prior business relationship with TeachBK principal Ilya Kiselev, who provided Rubic with a recorded statement of their conversation wherein Kiselev said the

referring attorney "'spits out" a percentage of the client consultation fee for the referral. *See* Kharitonov Decl. (annexing audio recording and certified translation of Kiselev WhatsApp voice memo quoted in the subject article).

### 1. Plaintiff is a limited public figure.

In *New York Times Company v. Sullivan*, the Supreme Court established that public officials and public figures claiming defamation must prove that the allegedly defamatory statement was made with "actual malice"—that is, "with knowledge that it was false or with reckless disregard of whether it was false or not." *N.Y. Times*, 376 U.S. at 280, 84 S.Ct. 710. The Supreme Court recognized that actual malice standard would bar some plaintiffs from recovering damages for erroneous and injurious statements. *Id.*, 376 U.S. at 270–72, 84 S.Ct. 710. Even so, the Court concluded that the law of defamation must provide some "breathing space" to avoid chilling constitutionally valuable speech. *Id.* at 271–72, 84 S.Ct. 710.

There are two types of public figures for which the requisite degree of fault is heightened—general and limited. Defendants assert that Plaintiff is a limited-purpose public figure for this controversy. In undertaking this inquiry under California law, courts consider whether "(i) a public controversy existed when the statements were made, (ii) whether the alleged defamation is related to the plaintiff's participation in the controversy, and (iii) whether the plaintiff voluntarily injected [himself] into the controversy for the purpose of influencing the controversy's ultimate resolution." *Planet Aid, Inc. v. Reveal*, 44 F.4th 918, 924 (9th Cir. 2022) (citing *Makaeff v. Trump Univ., LLC*, 715 F.3d 254, 261 (9th Cir. 2013)).[5] Here, the elements are met.

---

[5] The inquiry under Florida law is whether a plaintiff is a limited-purpose public figure involves three steps: (1) identifying whether there is a public controversy; (2) determining whether plaintiff played a central role in the controversy; and (3) determining whether the challenged statements were germane to the plaintiff's role in the controversy. *Friedgood v. Peters Publ'g Co.*, 521 So. 2d 236, 239 (Fla. 4th DCA 1988); *Della-Donna v. Gore Newspapers Co.*, 489 So. 2d 72, 76 (Fla. 4th DCA 1986).

13

First, there was an undisputed public controversy surrounding Russian-speaking emigres in the wake of the Russian invasion of Ukraine who were paying "opportunists" for consultations about crossing the U.S.-Mexico border. *See, e.g.*, Elliot Spagat, *Russians find asylum lifeline to US, but at a high price*, AP NEWS (Dec. 16, 2022), https://apnews.com/article/business-mexico-us-customs-and-border-protection-63ae1f08f2af3661b2de1d590d750218. This issue was "debated publicly and had foreseeable and substantial ramifications for nonparticipants." *Copp v. Paxton*, 45 Cal.App.4th 829, 845–846 (Cal. App. 1996).

Second, the allegations about TeachBK are part of this public controversy about "opportunists" who seek money to consult asylum-seekers about entry into the United States. *See* Ex. 1. Plaintiff is referenced in the article as a possible lawyer connected with TeachBK and its business model of assisting Russian-speaking asylum-seekers in Mexico in connection with entry into the United States. *Id.* That is evidenced by his frequent appearances on TeachBK's social media. *See* Slater Decl. at Ex. 2. Thus the "the alleged defamation [is] germane to the plaintiff's participation in the controversy." *Copp*, 45 Cal.App.4th at 846.

Third, Plaintiff voluntarily injected himself into this public controversy by associating himself with TeachBK. *Rosanova v. Playboy Enterprises, Inc.*, 411 F. Supp. 440, 440 (S.D. Ga. 1976), *aff'd*, 580 F.2d 859, 862 (5th Cir. 1978) (by associating with organized crime, the plaintiff "voluntarily engaged in a course [of conduct] that was bound to invite attention and comment"); *see also Ampex Corp. v. Cargle*, 128 Cal.App.4th 1569, 27 Cal. Rptr. 3d 863, 870 (Cal. App. 2005) ("[I]t is sufficient that the plaintiff attempts to thrust him or herself into the public eye.").

Additionally, Plaintiff is a limited public figure because he operates in a highly regulated field—legal services—, *Green Grp. Holdings, LLC v. Schaeffer*, 2016 WL 6023841, at *15 (S.D. Ala. Oct. 13, 2016) (citing *Silvester v. Am. Broad. Cos., Inc.*, 839 F.2d 1491(11th Cir.

14

1988) for the proposition that the "highly regulated nature" of the jai alai industry underscored the "public nature of the controversy"), and because he has "voluntarily placed" himself under "public scrutiny and comment" through his close association with a public-facing business—TeachBK—that Rubic has reported on. *Silvester*, 839 F.2d at 1494; *see* Slater Decl. at Ex. 2.

For these reasons, Plaintiff is a limited-purpose public figure for purposes of this controversy.

### 2. As a limited public figure, Plaintiff fails to show fault.

As a limited public figure, Plaintiff is required to show that Defendants' alleged conduct constituted actual malice. He cannot. To satisfy the actual malice standard, Plaintiff would need to put forth "evidence in the record [that] would permit a reasonable finder of fact, by clear and convincing evidence, to conclude that [Rubic] published a defamatory statement with actual malice." *Masson v. New Yorker Mag., Inc.*, 501 U.S. 496, 508, 111 S.Ct. 2419, 115 L.Ed.2d 447 (1991); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255–256, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). Actual malice is a subjective test; it means that Rubic must have published a statement with "knowledge that it was false" or "reckless disregard of whether it was false or not." *N.Y. Times*, 376 U.S. at 280, 84 S.Ct. 710. Reckless disregard, in turn, means that Rubic "in fact entertained serious doubts as to the truth" of that statement. *St. Amant v. Thompson*, 390 U.S. 727, 731, 88 S.Ct. 1323, 20 L.Ed.2d 262 (1968). Failure to show Defendants' reckless disregard must result in dismissal. *Michel*, 816 F.3d at 702 ("every circuit that has considered the matter has applied the *Iqbal/Twombly* standard and held that a defamation suit may be dismissed for failure to state a claim where the plaintiff has not pled facts sufficient to give rise to a reasonable inference of actual malice").

A plaintiff must do more than invoke the "magic words" of actual malice; failure to do so dooms a plaintiff's claim. *See, E.g., Baker v. Joseph*, 938 F. Supp. 2d 1265, 1269 (S.D. Fla. 2013). Here, nothing in the Complaint suggests that Defendants made up the allegation that a lawyer gave a referral fee (or "kickback" as the Complaint alleges) to TeachBK or vice-versa. Nothing in the Complaint suggests falsity that rises to the level of actual malice. *St. Amant*, 390 U.S. at 732 (U.S. Supreme Court has explained, "actual malice" is generally limited to circumstances where a "story is fabricated by the defendant, is the product of his imagination, or is based wholly on an unverified anonymous telephone call.").

Instead, the translated article explains that Rubic published the statement at issue because TeachBK's owner told a former colleague that its lawyer "spits out" (or as Plaintiff prefers, kicks back) money for referrals. That source was reputable, provided an audio recording as referenced in the article, and Plaintiff cannot show that Defendants entertained doubts about the truth of the statement when the source of the reporter's knowledge as to whether TeachBK gets a referral fee is TeachBK itself. *See Levan v. Capital Cities/ABC, Inc*., 190 F.3d 1230, 1241 (11th Cir. 1999) (to show actual malice in an implied defamation case, the plaintiff must show that the defendant "entertained serious doubts" that the "underlying thrust" of the publication was true); *Newton v. Nat'l Broad*. Co., 930 F.2d 662, 682–83 (9th Cir. 1990) (no actual malice under *St. Amant*/*Sullivan* where journalist relies on a source whose reliability is unknown if the journalist made some effort to verify the source's information); *Don King Prods., Inc. v. Walt Disney Co*., 40 So. 3d 40, 43 (Fla. 4th DCA 2010) (there must be evidence to "permit the conclusion that the defendant in fact entertained serious doubts as to the truth of [their] publication.") (quoting *St. Amant*, 390 U.S. at 731).

Put simply, Plaintiff cannot punish Rubic for relying on sources to publish information of public concern. If Plaintiff has a defamation claim from this reporting it could only be against Mr. Kiselev, who, to the extent he was even referring to Plaintiff, explained that TeachBK gets a percentage from lawyers who accept consultations generated by TeachBK.

For these reasons, this motion should be granted.

### III. Defendants Are Entitled to Their Attorney's Fees.

Defendants are entitled to their attorney's fees under the California (or Florida) anti-SLAPP statute. Defendants will address entitlement to attorney's fees under each statute if the Court declines to apply California law.

#### A. Defendants are entitled to fees under the California anti-SLAPP statute.

California law provides for the pre-trial dismissal of certain actions, known as Strategic Lawsuits Against Public Participation, or SLAPPs, which are cases "that masquerade as ordinary lawsuits but are intended to deter ordinary people from exercising their political or legal rights or to punish them for doing so." *Makaeff*, 715 F.3d at 261.

To show entitlement to attorney's fees under the California anti-SLAPP statute, courts generally apply a two-part test. *Id.* First, the defendant must make a "make a prima facie showing that the plaintiff's suit arises from an act in furtherance of the defendant's constitutional right to free speech." *Id.* Then at the second step, if the "anti-SLAPP motion […] challenges only the legal sufficiency of a claim, a district court should apply the Federal Rule of Civil Procedure 12(b)(6) standard and consider whether a claim is properly stated." *Planned Parenthood Fed'n of Am., Inc. v. Ctr. for Med. Progress*, 890 F.3d 828, 834 (9th Cir. 2018). If the motion succeeds, the defendant is entitled to attorney's fees and costs. *See* Cal. Civ. Pro. Code § 425.16(c).

17

At least one federal circuit has held that the procedural mechanism under California's anti-SLAPP statute did not apply in federal courts sitting in diversity. *See La Liberte v. Reid*, 966 F.3d 79, 87–88 (2d Cir. 2020) (holding California's motion to strike procedure in anti-SLAPP statute conflicted with Federal Rules of Civil Procedure and was therefore inapplicable in federal court). Defendants, however, do not invoke the procedural mechanism of the California anti-SLAPP statute. Instead, they travel under that statute solely for the purpose of fee entitlement. *See Reed v. Chamblee*, 2024 WL 69570, at *6 (M.D. Fla. Jan. 5, 2024) (collecting cases for the proposition that despite the procedural mechanism, the "fee provision" in the Florida anti-SLAPP statute was enforced by "the tide of the Courts within the Circuit"). Because they have shown that the lawsuit stemmed from Rubic's reporting and the claims fail under Rule 12(b)(6), they are entitled to attorney's fees under California's anti-SLAPP statute.

### B. Defendants are entitled to fees under the Florida anti-SLAPP statute.

Florida enacted Section 768.295, Florida Statutes, to deter meritless claims aimed at silence comment and protected speech. § 768.295(1), Fla. Stat. The statute protects the "rights of free speech in connection with public issues" by shielding individuals and entities from the great expense of meritless lawsuits. *Id.* To that end, the law prohibits anyone from bringing a lawsuit (a) that is "without merit," and (b) because the defendant "has exercised the constitutional right of free speech in connection with a public issue," which the statute defines as any written or oral statement "made in or in connection with a . . . news report, or other similar work." *Id*. at (2)(a), (3). The Florida Legislature included a fee-shifting provision in the statute that requires the court to award the defendant its reasonable attorneys' fees and costs incurred in connection with a claim that an action was filed in violation of the law. *Id.* at (4).

Florida federal courts have consistently applied Florida's anti-SLAPP law to deter SLAPP lawsuits that suppress First Amendment rights. *See, e.g., Corsi*, 519 F.Supp.3d 1110 (granting defendants' fees and costs under Florida's anti-SLAPP statute which functions as a "garden variety fee shifting provision," and "does not 'answer the same question' as the Federal Rules") (citations omitted); *Bongino v. the Daily Beast Co.*, 477 Supp. 3d 1310 (S.D. Fla. 2020) (granting defendant fees and costs under Florida's anti-SLAPP statute and concluding that the statute "unequivocally" applies in federal court because it does not "conflict with any Federal Rules of Civil Procedure"); *Anderson v. Best Buy Stores L.P.*, 2020 WL 5122781, at *4 (M.D. Fla. July 28, 2020) (recommending granting a motion to dismiss and awarding the defendant reasonable fees).

This case meets both requirements of Florida's anti-SLAPP law. First, as detailed above, Plaintiff's lawsuit is "without merit." § 768.295(3), Fla. Stat. Specifically, the allegations do not support a defamation claim as a matter of law. Plaintiff cannot plead facts to support its defamation per se claims. It cannot plead damages for its per quod claims. None of the claims are even about Ms. Panova. And the article's contents are based on a recording from a direct source. Second, this lawsuit arises out of the exercise of "constitutional right of free speech in connection with a public issue," *id.*, because the reporting at issue constitutes a "written or oral statement that is protected under applicable law" and was "made in or in connection with" a "news report, or other similar work." Id. § 768.295(2)(a). Under these circumstances, an award of reasonable attorneys' fees and costs is appropriate. § 768.295(4), Fla. Stat.

## Conclusion

For these reasons, Defendants Kateryna Panova and Rubic, LLC respectfully request that the Court dismiss Plaintiff's Complaint with prejudice and find that they are entitled to their reasonable attorney's fees.

Dated: February 9, 2024.

                                                Respectfully submitted,

                                                **James M. Slater**
                                                James M. Slater (FBN 111779)
                                                Slater Legal PLLC
                                                113 S. Monroe Street
                                                Tallahassee, FL 32301
                                                Tel.: (305) 523-9023
                                                james@slater.legal

                                                *Attorneys for Defendants*

## Certificate of Service

      I hereby certify that a true and correct copy of this motion was served this 9th day of February 2024 on Plaintiff's counsel via email to:

Maurice Arcadier
Arcadier, Biggie, and Wood, PLLC
2815 W. New Haven #304
Melbourne, Florida 32904
Arcadier@ABWlegal.com

                                                **James M. Slater**
                                                James M. Slater