UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
FORT PIERCE DIVISION

ALEKSEY TOVARIAN,

    Plaintiff,

v.

                                        Case No. 2:24-cv-14037-AMC

RUBIC, LLC,

    Defendant.
_____/

### KATERYNA PANOVA'S MOTION FOR ATTORNEY'S FEES

Pursuant to Local Rule 7.3, Kateryna Panova respectfully moves for an award of reasonable attorney's fees under the mandatory fee-shifting provisions of the California and Florida anti-SLAPP[1] statutes, whichever the Court deems applicable. Ms. Panova asserts that California law and the California anti-SLAPP statute, Cal. Civ. P. Code section 425.16, applies. To the extent the Court disagrees, her position is that she is nonetheless entitled to fees under Florida's anti-SLAPP statute, section 768.295, Fla. Stat.

### Introduction and Background

This is a SLAPP involving Defendant Rubic's reporting on a matter of public concern. As referenced in the certified translation of the subject article [ECF No. 4-1], Rubic was engaged in extensive reporting through various sources regarding the business model of a company called "TeachBK," which is purportedly owned by two Russian asylum-seekers who provide "immigration services" to other Russian-speaking asylum-seekers despite not being lawyers.

---

[1] Strategic Lawsuit Against Public Participation.

As depicted in the subject article, Defendant Rubic's reporting and newsgathering on TeachBK and its practices included speaking to several sources. One such source, as referenced in the pending motion to dismiss, was Maksim Kharitonov. [ECF No. 17 at 2]. He was not named in the article, but he provided Rubic with a WhatsApp voice memo that was sent to him by Ilya Kiselev, one of TeachBK's founders. *See* [ECF No. 5 (Declaration of Maksim Kharitonov)]. The content or Mr. Kiselev's recording was referenced in the subject article, in which Rubic journalist Nata Polynkova wrote: "Rubic obtained an audio recording of a phone conversation where [TeachBK's] founder, Ilya Kiselev, explains how his business is structured." [ECF No. 4-1]. According to the audio recording provided by Mr. Kharitonov, Rubic learned that TeachBK would guide asylum speakers to a lawyer who would then charge for a consultation and then "spit[] out" a percentage of the consultation fee to TeachBK's owners, who are not lawyers. [*See* ECF No. 4-1 & ECF No. 5-1].

Plaintiff sued Rubic and its owner Kateryna Panova for defamation per se and pe quod. [ECF No. 1-2 & 9]. After the Court dismissed Plaintiff's First Amended Complaint and cautioned him to address Rubic and Ms. Panova's dismissal arguments [ECF No. 13], Plaintiff filed the operative Second Amended Complaint [ECF No. 14], in which he dismissed Ms. Panova as a party. The operative complaint only purports to state a cause of action against Rubic for defamation. [*Id.*].

Because Plaintiff has voluntarily dismissed Ms. Panova from this defamation case after considering her arguments in her motion to dismiss the First Amended Complaint, the Cout should find that Ms. Panova is the prevailing party and that she is entitled to attorney's fees under the applicable anti-SLAPP statute. The indisputable evidence shows that Ms. Panova did not write the article. [ECF No. 4-1]. Nata Polynkova did. [*Id.*]. In fact, no iteration of the complaint explained

how Ms. Panova had anything to do with Rubic's subject, other than being an owner of the publication. Because the only purpose of suing Ms. Panova was an attempt to silence her and her publication from reporting on Plaintiff and his connection to TeachBK, the Court should find that the applicable anti-SLAPP statute applies here.

In compliance with Local Rule 7.3(b)'s requirement that the parties "confer and attempt in good faith to agree on entitlement to and the amount of fees and expenses," Ms. Panova's counsel wrote to Plaintiff's counsel and asked whether he would agree to negotiate her attorney's fees. He indicated that Plaintiff opposed the relief set forth herein. Thereafter, Ms. Panova also sent a copy of this motion and accompanying documents to Plaintiff's counsel and had a telephone conversation with Plaintiff's counsel on the motion. Plaintiff maintains his opposition and accordingly, Ms. Panova now timely files this motion.

I. **The Anti-SLAPP Statute Applies.**

Ms. Panova is entitled to its attorney's fees under the California (or Florida) anti-SLAPP statute.[2]

A. **Ms. Panova is entitled to fees under the California anti-SLAPP statute.**

California law provides for the pre-trial dismissal of certain actions, known as Strategic Lawsuits Against Public Participation, or SLAPPs, which are cases "that masquerade as ordinary lawsuits but are intended to deter ordinary people from exercising their political or legal rights or to punish them for doing so." *Makaeff v. Trump Univ., LLC*, 715 F.3d 254, 261 (9th Cir. 2013).

---

[2] In her motion to dismiss [ECF No. 10], Ms. Panova explained that California law should apply under the most significant relationship test. *Nix v. ESPN, Inc.*, 772 F. App'x 807, 809 (11th Cir. 2019). Whether the Court applies Florida or California law, Ms. Panova is the prevailing party and entitled to fees for the reasons outlined below.

3

To show entitlement to attorney's fees under the California anti-SLAPP statute, courts generally apply a two-part test. *Id.* First, the defendant must make a "make a prima facie showing that the plaintiff's suit arises from an act in furtherance of the defendant's constitutional right to free speech." *Id.* Then at the second step, if the "anti-SLAPP motion […] challenges only the legal sufficiency of a claim, a district court should apply the Federal Rule of Civil Procedure 12(b)(6) standard and consider whether a claim is properly stated." *Planned Parenthood Fed'n of Am., Inc. v. Ctr. for Med. Progress*, 890 F.3d 828, 834 (9th Cir. 2018). If the motion succeeds, the defendant is entitled to attorney's fees and costs. *See* Cal. Civ. Pro. Code § 425.16(c).

At least one federal circuit has held that the procedural mechanism under California's anti-SLAPP statute did not apply in federal courts sitting in diversity. *See La Liberte v. Reid*, 966 F.3d 79, 87–88 (2d Cir. 2020) (holding California's motion to strike procedure in anti-SLAPP statute conflicted with Federal Rules of Civil Procedure and was therefore inapplicable in federal court). Rubic, however, does not invoke the procedural mechanism of the California anti-SLAPP statute. Instead, it travels under that statute solely for the purpose of fee entitlement. *See Reed v. Chamblee*, 2024 WL 69570, at *6 (M.D. Fla. Jan. 5, 2024) (collecting cases for the proposition that despite the procedural mechanism, the "fee provision" in the Florida anti-SLAPP statute was enforced by "the tide of the Courts within the Circuit"). Because she has shown that the lawsuit stemmed from Rubic's reporting, and she is the prevailing party, as set forth below, Ms. Panova is entitled to attorney's fees under California's anti-SLAPP statute.

**B. Ms. Panova is entitled to fees under the Florida anti-SLAPP statute.**

Florida enacted Section 768.295, Florida Statutes, to deter meritless claims aimed at silence comment and protected speech. § 768.295(1), Fla. Stat. The statute protects the "rights of free speech in connection with public issues" by shielding individuals and entities from the great

4

expense of meritless lawsuits. *Id.* To that end, the law prohibits anyone from bringing a lawsuit (a) that is "without merit," and (b) because the defendant "has exercised the constitutional right of free speech in connection with a public issue," which the statute defines as any written or oral statement "made in or in connection with a . . . news report, or other similar work." *Id.* at (2)(a), (3). The Florida Legislature included a fee-shifting provision in the statute that requires the court to award the defendant its reasonable attorneys' fees and costs incurred in connection with a claim that an action was filed in violation of the law. *Id.* at (4).

Florida federal courts have consistently applied Florida's anti-SLAPP law to deter SLAPP lawsuits that suppress First Amendment rights. *See, e.g., Corsi*, 519 F.Supp.3d 1110 (S.D. Fla. 2021) (granting defendants' fees and costs under Florida's anti-SLAPP statute which functions as a "garden variety fee shifting provision," and "does not 'answer the same question' as the Federal Rules") (citations omitted); *Bongino v. the Daily Beast Co.*, 477 Supp. 3d 1310 (S.D. Fla. 2020) (granting defendant fees and costs under Florida's anti-SLAPP statute and concluding that the statute "unequivocally" applies in federal court because it does not "conflict with any Federal Rules of Civil Procedure"); *Anderson v. Best Buy Stores L.P.*, 2020 WL 5122781, at *4 (M.D. Fla. July 28, 2020) (recommending granting a motion to dismiss and awarding the defendant reasonable fees).

This case meets both requirements of Florida's anti-SLAPP law. First, as detailed above, Plaintiff's lawsuit is "without merit." § 768.295(3), Fla. Stat. Specifically, the allegations do not support a defamation claim against Ms. Panova or her publication as a matter of law. The article's contents are based on a recording from a direct source. And this lawsuit arises out of the exercise of "constitutional right of free speech in connection with a public issue," *id.*, because the reporting at issue constitutes a "written or oral statement that is protected under applicable law" and was

5

"made in or in connection with" a "news report, or other similar work." *Id.* § 768.295(2)(a). Under these circumstances, an award of reasonable attorneys' fees and costs is appropriate, especially to Ms. Panova whose only connection to this lawsuit is her ownership of the publication. § 768.295(4), Fla. Stat.

### II. Ms. Panova Is the Prevailing Party.

Plaintiff's voluntary dismissal of Ms. Panova makes her the prevailing party under both California and Florida law. *See McMahon v. Toto*, 256 F.3d 1120, 1132 (11th Cir.2001) ("statutes allowing for recovery of attorney's fees are substantive for *Erie* purposes.").

#### A. Ms. Panova is the prevailing party under California law.

Under California law, a court considering an anti-SLAPP motion generally determines whether a defendant is a prevailing defendant by assessing the merits of the motion to strike. *See Gottesman v. Santana*, 263 F. Supp. 3d 1034, 1042 (S.D. Cal. 2017). When a party is voluntarily dismissed, like here, California courts offer different approaches. *See id.* (citing *Mireskandari v. Mail*, 2014 WL 12561581, at *4 (C.D. Cal. Aug. 4, 2014), *aff'd in part, appeal dismissed in part sub nom*. *Mireskandari v. Associated Newspapers, Ltd.*, 665 Fed.Appx. 570 (9th Cir. 2016)).

Some courts require an adjudication on the merits of the motion to strike—which does not apply in federal courts in the Eleventh Circuit, *see Carbone v. Cable News Network, Inc.*, 910 F.3d 1345 (11th Cir. 2018) (Georgia's special motion to strike violated federal procedural rules)—, where others, mostly federal courts applying California law, have followed the so-called *Coltrain* approach, "which states that a plaintiff's voluntary dismissal raises a presumption that the defendant is the prevailing party that the plaintiff can rebut by explaining its reason for dismissal." *Gottesman*, 263 F. Supp. 3d at 1043 (citing *Coltrain v. Shewalter*, 66 Cal.App.4th 94, 106–07, 77 Cal.Rptr.2d 600 (Cal. App. 1998)).

Because courts have concluded California's special motion to strike does not comport with the Federal Rules of Civil Procedure, *see La Liberte v. Reid*, 966 F.3d 79, 87–88 (2d Cir. 2020), this Court should adopt the *Coltrain* approach and find that the voluntary dismissal raises the presumption that Ms. Panova is the prevailing party. *See Associated Newspapers, Ltd.*, 665 Fed.Appx. at 572 (affirming court's grant of attorney's fees under the *Coltrain* approach). Because Plaintiff dismissed Ms. Panova as a result of her motion to dismiss, Plaintiff cannot offer a good-faith rebuttal of the presumption.

### B. Ms. Panova is the prevailing party under Florida law.

Under Florida law, in the absence of a statutory or contractual provision to the contrary, the defendant is the prevailing party for purposes of attorneys' fees if the plaintiff voluntarily dismisses the case. *See Parra v. Minto Townpark, LLC*, 2009 WL 2602678, at *2 (S.D. Fla. Aug. 21, 2009) ("In the absence of a specific or limiting provision, general law regarding prevailing party status upon voluntary dismissal applies. . . . *Generally, when a plaintiff voluntarily dismisses an action, the defendant is deemed the prevailing party for purposes of attorney's fees.*") (emphasis added); *see also Herbst v. N. Ocean Condos, L.P.*, 2009 WL 2257827, at *1 (S.D. Fla. July 29, 2009); *Alhambra Homeowners Ass'n v. Asad*, 943 So. 2d 316, 318 (Fla. 4th DCA 2006) ("The general rule is that when a plaintiff voluntarily dismisses an action, the defendant is the 'prevailing party' within the meaning of statutory or contractual provisions awarding attorney's fees to the prevailing party in litigation.") (collecting cases for this proposition).

In *Bongino v. Daily Beast Company, LLC*, the Court determined that the plaintiff's voluntary dismissal of his defamation claim made the publication the prevailing party under Florida law. *Bongino v. Daily Beast Co., LLC*, 2021 WL 4976287, at *5 (S.D. Fla. Feb. 9, 2021), report and recommendation adopted, 2021 WL 4316099 (S.D. Fla. Sept. 23, 2021) (collecting cases). As such, the Court then determined whether that the anti-SLAPP statute applied and

7

whether the fee award request was reasonable.

### III. The Fee Request is Reasonable.

Courts in the Eleventh Circuit utilize the "lodestar approach" to calculate a reasonable attorney's fee. *See Gray v. Bostic*, 625 F.3d 692 (11th Cir. 2010); *see also City of Burlington v. Dague*, 505 U.S. 557, 562 (1992). The lodestar figure is reached by "multiply[ing] the number of hours reasonably expended by a reasonable hourly rate." *Loranger v. Stierheim*, 10 F.3d 776, 781 (11th Cir. 1994). After determining the lodestar, courts may adjust the amount upwards or downwards based on the "results obtained." *Norman v. Hous. Auth. of City of Montgomery*, 836 F.2d 1292, 1302 (11th Cir. 1988). Here, the Court should compensate Ms. Panova for the requested amount because: (1) counsel's hourly billing rates are reasonable; (2) counsel worked an appropriate number of hours on this litigation; and (3) counsel obtained an excellent result in the litigation for Ms. Panova.

### A. Ms. Panova's counsel's billing rates are reasonable.

"A reasonable hourly rate is the prevailing market rate in the relevant legal community for similar services by lawyers of reasonably comparable skills, experience, and reputation." *Loranger*, 10 F.3d at 781. The relevant legal community is "the place where the case is filed"—here, South Florida. *ACLU of Ga. V. Barnes*, 168 F.3d 423, 437 (11th Cir. 1999). Evidence of reasonable hourly rates "may be adduced through direct evidence of charges by lawyers under similar circumstances or by opinion evidence." *Norman*, 836 F.2d at 1299.

The Court should conclude that Ms. Panova's counsel's rates are reasonable because her counsel is an experienced First Amendment and defamation lawyer, who utilized his specialized knowledge to effectively litigate Ms. Panova out of this case at an early stage. Counsel's hourly rate, as discounted for this case, is reasonable and in line with (if not below) comparable rates for

the applicable community.

Ms. Panova's counsel has litigated a wide array of First Amendment cases and was sought out by Ms. Panova based on his experience in handling these types of cases, including high-profile matters. *See* Declaration of James Slater, attached as **Exhibit 1**. Counsel's specialized experience in this area was necessary to effectively litigate the case thus far. *See Carruthers v. Israel*, 274 F. Supp. 3d 1345, 1353–54 (S.D. Fla. 2017) (in determining relevant market rates, the court considered the fact that the "complexity of this case required skilled lawyers with specialized knowledge"). Because of counsel's experience, he was able to effectively secure an early dismissal for Ms. Panova. *See Norman,* 836 F.2d at 1300 (noting that the intrinsic value of legal skill lies in "further[ing] the client's interest").

Despite counsel's degree of knowledge and experience in this area of the law, counsel's $500 hourly rate is reasonable and below market. *See, e.g.*, *Prison Legal News v. Inch*, 411 F. Supp. 3d 1198, 1207–08 (N.D. Fla. 2019) (finding, in a First Amendment and due process case, that lead counsel's hourly rates of $900 and $825 were reasonable within the legal market of Miami—where the case was originally filed—and noting the lawyers' "excellent reputations and abilities in determining a reasonable fee for their legal services"); *CBS Broad., Inc. v. Browning*, 2007 WL 2850527, at *3, *7 (S.D. Fla. Sept. 21, 2007) (approving, in 2007, hourly rates of $550 for the lead partner, $375 for a seventh-year associate, and $350 for a fourth-year associate, noting that "[i]t is undisputed that the experience of the Cahill Gordon attorneys in [First Amendment] litigation is substantial").

Courts in this District have also approved rates below counsel's $500 rate for nonspecialized, general matters. *See All Web Leads, Inc. v. D'Amico*, 2019 WL 2051970, at *2 (S.D. Fla. May 2, 2019) (finding, in a contract case, that $525 per hour was reasonable for co-

9

managing partner and $400 per hour reasonable for seventh-year associate); *Procaps S.A. v. Patheon Inc.*, 2013 WL 6238647, at *14 (S.D. Fla. Dec. 3, 2013) (approving hourly rate of $565 for lead counsel from premier national law firm in federal antitrust case); *Kleiman v. Wright*, 2020 WL 1980601, at *3–4 (S.D. Fla. Mar. 17, 2020) (noting that "the top civil litigators in Palm Beach County . . . [charge] between $600 and $700 per hour"). Accordingly, Ms. Panova's attorney's rate of $500 per hour is reasonable.

### B. The number of hours worked is reasonable.

Next, a fee applicant must provide a record of its counsel's hours, describing the general subject matter of counsel's work during those hours "with sufficient particularity so that the district court can assess the time claimed for each activity." *Norman*, 836 F.2d at 1303. Counsel should exercise billing judgment by excluding "excessive, redundant or otherwise unnecessary [hours]." *Hensley*, 461 U.S. at 434. While the fee applicant bears the initial burden of submitting evidence sufficient to allow the Court to confirm that the requested fees are not excessive, "'objections and proof from fee opponents' concerning hours that should be excluded must be specific and 'reasonably precise.'" *Barnes*, 168 F.3d at 428 (quoting *Norman*, 836 F.2d at 1301).

Here, Ms. Panova seeks 10.64 hours' worth of her counsel's time. Attached to the Slater Declaration is a full accounting of the requested fees with descriptions of the tasks performed for each billed hour. To streamline this process and present the most reasonable fee request to the Court, counsel excluded any entries that were unrelated to the motions to dismiss. Some of the services excluded from the time entries are the state-court filings, removal papers, post-removal papers related to subject matter jurisdiction, and review and analysis of any other matters in the case outside the issues relative to the motions to dismiss. *See* Slater Decl. ¶ 10; *see also Khan v. Rundle*, 2008 WL 11406174, at *2 (S.D. Fla. Mar. 10, 2008) (granting motion for attorneys' fees,

where "the attorneys in question exercised sound 'billing judgment' for the time entries at hand"), *report and recommendation adopted*, 2008 WL 11406159 (S.D. Fla. Mar. 25, 2008). The request is also only for half the time expended on the first two motions to dismiss, as Rubic remains in the case. *See* Slater Decl. ¶ 11.

In *Parekh v. CBS Corporation*, the trial court awarded CBS $139,974.24 in attorney's fees under the Florida anti-SLAPP law following a successful motion to dismiss. 2019 WL 2230075, at *4, *aff'd*, 2020 WL 3400679. That award is consistent with the Eleventh Circuit's recognition of the "powerful interest in ensuring that free speech is not unduly burdened by the necessity of defending against expensive yet groundless litigation." *Michel v. NYP Holdings*, 816 F.3d 686, 702 (11th Cir. 2016).

### C.  Ms. Panova's counsel obtained a favorable result for her.

Finally, courts may deviate from the requested fee award based on the "results obtained" in the litigation. *Norman*, 836 F.2d at 1302. Here, Ms. Panova's counsel obtained complete success for her—dismissal from the case before any discovery or responsive pleading. Ms. Panova is not seeking all her fees here, just the ones related to her motions to dismiss. The Court should award her all the fees she seeks because of the results obtained and the narrowness of her request.

### Conclusion

For these reasons, Kateryna Panova respectfully requests that the Court grant this motion, determine that she is entitled to attorney's fees, and award her $5,320 in attorney's fees.

### Certificate of Good-Faith Conference

Pursuant to Local Rules 7.1(a)(3) and 7.3, the undersigned certifies that he attempted to confer with Plaintiff's counsel regarding the subject matter of this motion, including by serving a draft of the motion and declaration. Ms. Panova's counsel also conferred with Plaintiff's counsel by phone on these issues. Plaintiff's counsel stated that Plaintiff opposes the requested relief.

11

Dated: March 19, 2024.

                                        Respectfully submitted,

**James M. Slater**
James M. Slater (FBN 111779)
Slater Legal PLLC
113 S. Monroe Street
Tallahassee, Florida 32301
Tel.: (305) 523-9023
james@slater.legal

*Attorneys for Kateryna Panova*