UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
FORT PIERCE DIVISION

ALEKSEY TOVARIAN,

    Plaintiff,

v.
                                                  Case No. 2:24-cv-14037-AMC

RUBIC, LLC,

    Defendant.
_____/

## RUBIC'S REPLY IN SUPPORT OF ITS MOTION TO DISMISS

Defendant Rubic, LLC files this reply in support of its motion to dismiss the operative Second Amended Complaint (SAC). [ECF Nos. 14 & 17]. In his response [ECF No. 24], among other things, Plaintiff attempts to cast doubt on the purpose of Rubic's article and its reliance on the leaked TeachBK audio recording. For the reasons stated here, the Court should dispense with Plaintiff's arguments and grant the motion to dismiss.

**I.     Plaintiff's new allegations about the article are a transparent attempt to avoid Rubic's fault defense.**

To begin with, the Court should disregard Plaintiff's allegations in the SAC concerning the alleged motivation behind the subject article. For the first time—after Rubic twice moved to dismiss this case based on Plaintiff's inability to show actual malice on the facts pleaded in the state-court complaint and First Amended Complaint—Plaintiff has invented a new theory to convince the Court that the article was made with actual malice. He claims that because he declined to participate in Rubic's sponsored attorney list, Rubic essentially shook him down—participate with Rubic and the article gets taken down. SAC ¶¶ 10–13, 23; Pl.'s Resp. at 7. But that is not true. In Plaintiff's very first iteration of the Complaint he alleged the opposite: that Rubic was not going

to take down the article, even after receiving a retraction letter, "because [Panova, Rubic's owner] is relying on an anonymous source." [ECF No. 1-2 ¶ 61]. This is not a shakedown, but a sourced article about TeachBK and those who work with it, with a source who was able to provide a direct quote from TeachBK's principal through a saved WhatsApp voice memo. Plaintiff acknowledged that the article and statement were not fabrications because he at first sought to unmask Rubic's then-anonymous source through a pure bill of discovery in the first version of his Complaint. [*Id.* at Count V]. He sought to:

- "Identify the person or persons responsible for the libelous statements; and
- "Pursue a claim for defamation against the correct wrongdoer(s)."

[*Id.* at ¶ 64(a) & (b)]. Plaintiff wanted to sue the man who leaked Mr. Kiselev's audio recording to Rubic.[1] It strains credulity for Plaintiff to now assert that the article—mostly about TeachBK and its business operations—was simply extortion to persuade a single attorney to participate in an attorney listing.

Because the new allegations are a transparent and flagrant attempt to defeat Rubic's dispositive defense on fault, the Court should not consider them and instead rely on those pertinent allegations in the previous iterations of the Complaint. *See Goldstein v. Firer*, 2022 WL 18704836, at *1 (S.D. Fla. May 2, 2022); *Harapeti v. CBS Television Stations Inc.*, 2021 WL 3888126, at *4 (S.D. Fla. July 2, 2021), report and recommendation adopted, 2021 WL 3887542 (S.D. Fla. Aug. 31, 2021) (citing *Fernandez v. Sch. Bd. of Miami-Dade Cty.*, 201 F. Supp. 3d 1353, 1361 n.1 (S.D. Fla. 2016)). In doing so, the Court should "ask whether the defendant, instead of acting in good faith, actually entertained serious doubts as to the veracity of the published account, or was highly aware that the account was probably false." *Trump Media & Tech. Grp. Corp. v. WP Co.*, 2024

---

[1] He has known that person's identity for several months now, but opted not to sue him when the Court dismissed the fictitious defendant after removal.

2

WL 1013188, at *4 (M.D. Fla. Mar. 8, 2024) (citation omitted). "Actual malice can be found where it is shown that the defamatory statements are wholly fabricated, or so inherently improbable that it would be reckless to circulate them, or where there are obvious reasons to doubt the veracity of the story's source. *Id.* Here, it cannot be said that Rubic entertained serious doubts where it relied on a source with direct knowledge of TeachBK and its business model—TeachBK's principal Ilya Kiselev. For those reasons, Plaintiff cannot show the requisite degree of fault—actual malice.[2]

## II. The article's minor alterations do not change the source content's context, which is that TeachBK admittedly receives referral fees from lawyers.

Plaintiff argues—taking excerpts from Mr. Kiselev's WhatsApp voice memo—that the minor changes made to the quoted source material create an actionable issue and create the implication of unlawful conduct. The Court should dispense with those arguments.[3]

<u>First</u>, the minor changes to the source material in the article do not change its context. The statements therein are not false so long as "the substance, the gist, the sting, of the libelous charge be justified." *Hughes v. Hughes*, 122 Cal. App. 4th 931, 936 (Cal. App. 2004); *Smith v. Cuban Am. Nat'l Found.*, 731 So.2d 702, 706–07 (Fla. 3d DCA 1999) (same) (explaining falsity only exists where "the publication is substantially and materially false, not just if it is technically false"). Minor misrepresentations are not false because they do not produce a different effect on the reader

---

[2] Plaintiff makes no concrete argument in his response that he is not a limited-purpose public figure or that the actual malice standard should not apply to him, other than suggesting in a footnote that he is able to overcome the daunting actual malice standard irrespective of which standard applies. *See* Pl.'s Resp. at 8 n. 18. His failure to grapple with why the standard should not apply here is an effective concession that he is a limited-purpose public figure for purposes of this controversy. A large part of his initial pleading was an effort to dox and sue the source who leaked Mr. Kiselev's audio recording. That suggests that crux of that claim is really an effort to protect his benefactor, TeachBK, leading credence to the fact that Plaintiff has a role in the public controversy. *Rosanova v. Playboy Enterprises, Inc.*, 411 F. Supp. 440, 440 (S.D. Ga. 1976), aff'd, 580 F.2d 859, 862 (5th Cir. 1978) (by associating with organized crime, the plaintiff "voluntarily engaged in a course [of conduct] that was bound to invite attention and comment").

[3] The Court can also independently dismiss Plaintiff's SAC for failing—for a third time—to attach a copy of the article in English. Only Rubic has provided a certified translation of the article. Plaintiff has failed to provide the Court the context it requires to determine the sufficiency of his allegations.

than the truth. *Mgmt. Consultants v. Am. Broad. Companies, Inc.*, 306 F.3d 806, 826 (9th Cir. 2002) (misrepresentation that lab tech had worked two thirteen-hour days, rather than one fourteen-hour day and one eleven-hour day, was not actionable). That is, "[a]s long as a report is substantially correct, '[i]t is not necessary that it be exact in every immaterial detail or that it conform to the precision demanded in technical or scientific reporting.'" *Readon v. WPLG, LLC*, 317 So. 3d 1229, 1234–35 (Fla. 3d DCA 2021) (citing *Woodard v. Sunbeam Television Corp.*, 616 So. 2d 501, 502–03 (Fla. 3d DCA 1993), quoting Restatement (Second) of Torts § 611, cmt. f (1977)). The key issue is whether the incorrectly reported material would "have had a different effect on the mind of the viewer" by affecting "the gist of the story." *Woodard*, 616 So. 2d at 503.

Here, Plaintiff correctly states that Mr. Kiselev's source material was about brainstorming with Mr. Kharitonov about how to set up a TeachBK affiliate in the United Kingdom. But the message is not divorced from TeachBK's United States model—Mr. Kiselev explained that his strategy for the United Kingdom was based on the U.S. model that had already been in effect for 5 years. [ECF No. 5-1]. Moreover, Mr. Kiselev explained that the U.K. model could have dozens of consultations a day and provide online content "the way we're doing it in the United States" and that when the attorney gets on board Teach BK U.S. "control[s] him," who "spits a certain percentage to us for the referral." [*Id.*].

Plaintiff's suggestion that the source is about English solicitors and barristers misses the point. This is Mr. Kiselev explaining how to take his <u>existing</u> business model on the road. That model includes fee-sharing between TeachBK and the lawyer Mr. Kiselev "control[s]," who Plaintiff asserts is him. Plaintiff complains that the currency modification to $50 from €50 changes the context. He complains the excerpt could alter the impression about whether the money went to TeachBK from the controlled attorney or between the U.K. affiliate and the U.S. parent. But neither

of those aspects of the article change the gist of the source material. The effect on the reader is that TeachBK and the attorney have an arrangement. It therefore does not matter whether the "€50" reference in the source material may have been in the context of an expansion of the business or fee-sharing between divisions of the business. It does not change the impression of what Mr. Kiselev said about the attorney. He said that his associated lawyer "spits out" a fee for the referral, and the reader would understand that TeachBK takes a cut—which Mr. Kiselev admitted it does—not that a hypothetical barrister was giving money to a possible Teach BK in the United Kingdom.[4] Accordingly, the minor change to the source material does not change the effect, make the article defamatory, or show that Rubic acted with reckless disregard. The Court should grant the motion to dismiss on this basis.

Second, even if the minor alterations to the source material did change its context, the article still lacks defamatory meaning. Plaintiff argues that Mr. Kiselev's statements create the impression that Plaintiff is engaged in unlawful fee-sharing with nonlawyers under the California Bar Rules even though they are, as he suggests, only about a hypothetical Teach BK in the United Kingdom. He cites several rules and explains that there are exceptions that are "not relevant here" to the prohibition on sharing fees with nonlawyers that demonstrate the defamatory meaning in the quoted source material. Pl.'s Resp. at 6. The quote in the article does not suggest any defamatory meaning because it is not clear that there is any unlawful activity between TeachBK and any attorney based on what Mr. Kiselev said. That is problematic for Plaintiff because nothing in the SAC suggests that TeachBK and its controlled attorney are not compliant with the rules or subject to any unnamed exceptions to them. TeachBK could be an approved referral service under California law, for example. Beyond conclusory allegations, Plaintiff does not provide enough

---

[4] The statements in the article are also true or substantially true for this reason. *Smith*, 731 So. 2d at 706. The article relies on Mr. Kiselev's own statements that he gets a fee from his affiliated attorney.

5

information here to show that the statement is false or has defamatory meaning sufficient to state a prima facie defamation claim, even if the Court were to agree with him that the context was changed by modifying the currency. *Kaelin v. Globe Comm. Corp.*, 162 F.3d 1036, 1039 (9th Cir. 1998) ("a defamatory meaning must be found, if at all, in a reading of the publication as a whole"). The failure to plead sufficient facts in that regard is an independent basis for dismissal.[5] *Mamani v. Berzain*, 654 F.3d 1148, 1153 (11th Cir. 2011) ("legal conclusions without adequate factual support" or "[f]ormulaic recitations of the elements of a claim" constitute grounds to dismiss.).

### III. Plaintiff again misunderstands Rubic's invocation of the anti-SLAPP statute.

Plaintiff argues that Rubic is invoking California law "in order to utilize its anti-Slap statutes [sic]." Pl.'s Resp. at 5. That is wrong. First, Rubic is asking the Court to look at California law for the sufficiency of Plaintiff's claims and its defenses. Second, Rubic is not asking the Court to apply California procedural law, but merely the fee-shifting mechanism under either California or Florida's anti-SLAPP statutes. As Rubic set forth in its motion and Ms. Panova explained in her reply in support of her motion for fees, Plaintiff simply misunderstands what Rubic is trying to accomplish when it invokes the anti-SLAPP statute. It is not trying to apply the procedural state-court mechanisms, which the courts have found to violate Rules 8, 12 and 56. As explained in detail in those papers, the anti-SLAPP fee-mechanism is all that Rubic is seeking to apply, which application is enforced by "the tide of Courts within the Circuit." *Reed v. Chamblee*, 2024 WL 69570, at *6 (M.D. Fla. Jan. 5, 2024).

---

[5] Plaintiff asserts that TeachBK's "control" also creates a defamatory meaning because it would be unlawful for TeachBK to control Plaintiff in his representation of clients. Pl.'s Resp. at 7. But the concept of "control" there is rationally read to mean in the fee-sharing context, not that TeachBK is usurping the attorney-client relationship. And either way, Rubic is simply putting Mr. Kiselev's own words about TeachBK in the article.

## **Conclusion**

For these reasons, Defendant Rubic, LLC respectfully requests that the Court grant its motion to dismiss the Second Amended Complaint.

Dated: April 18, 2024

                                              Respectfully submitted,

                                              **James M. Slater**
                                              James M. Slater (FBN 111779)
                                              Slater Legal PLLC
                                              113 S. Monroe Street
                                              Tallahassee, Florida 32301
                                              Tel.: (305) 523-9023
                                              james@slater.legal

                                              *Attorneys for Kateryna Panova*