**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**FORT PIERCE DIVISION**

**CASE NO. 24-14037-CIV-CANNON/MAYNARD**

**ALEKSEY TOVARIAN,**

      **Plaintiff,**

**v.**

**RUBIC, LLC,**

      **Defendant.**

_____/

**REPORT AND RECOMMENDATION ON**
**DEFENDANT'S MOTION TO DISMISS [DE 17]**

Plaintiff Aleksey Tovarian ("Tovarian") brings a one-count defamation lawsuit against Defendant Rubic, LLC ("Rubic"), alleging that Rubic published an article (the "Article") accusing Tovarian of paying "kickbacks" to an immigration consultation company in exchange for client referrals.  DE 14.  Rubic filed a Motion to Dismiss Tovarian's Second Amended Complaint with prejudice for failure to state a claim ("Motion").  DE 17.  Rubic's Motion also seeks attorney's fees under the California and Florida anti-SLAPP[1] statutes.  *Id*.  Presiding U.S. District Judge Aileen M. Cannon has referred this Motion to me for a report and recommendation.  DE 28. Having considered the Motion, DE 17, Tovarian's Response, DE 24, Rubic's Reply, DE 25, and oral argument of the parties, I respectfully recommend that the Motion be **DENIED** for the reasons discussed below.

---

[1] The term "SLAPP" is an acronym for strategic lawsuit against public participation.  Anti-SLAPP statutes prevent abuse of the legal system by providing additional defenses to those who are sued for exercising their First Amendment rights.

## BACKGROUND

At this motion-to-dismiss stage, as I must, I accept Tovarian's factual allegations as true and construe them in the light most favorable to him.

Tovarian is an attorney licensed in California who operates his own law practice in San Francisco, California.  DE 14 ¶¶ 3-4.  His primary source of income stems from advising Russian-speaking clients on immigration matters.  *Id*. at ¶ 32.

Rubic is a Florida limited liability company that publishes an online website and blog targeted towards immigrants from Russian-speaking countries.  *Id*. ¶¶ 7-8.  Rubic's website and blog provide information about life in the United States and immigration-related concerns.  *Id*. The website also provides a list of lawyers in multiple states, to whom it refers clients and which it recommends to its readers.  *Id*. ¶ 10.  According to Tovarian, he has been invited to be listed on Rubic's website multiple times but has declined.  *Id*. ¶ 11.

On June 20, 2023, Rubic published an online article falsely stating that Tovarian sends a portion of his legal fees to a company called TeachBK in exchange for client referrals.  *Id*. ¶ 13. The Article, written entirely in Russian, is attached as an exhibit to the operative Second Amended Complaint ("Complaint").  DE 14-1.  Rubic has provided a certified translation of the Article, which Tovarian agrees is correct. DE 4-1; DE 31 at 28-29.[2]  The Article states: "TeachBK offers immigration consultations, paid sponsors in the U.S., sells cars to asylum seekers in Mexico (for

---

[2]  Normally, a plaintiff's failure to provide certified English translations of key documents would be grounds for dismissal.  *See Macbeg De Occidente S.A. de C.V. v. Kaloti Metals & Logistics, LLC*, 2013 WL 12145905 at *3 (S.D. Fla. June 25, 2013) (dismissing breach of contract claim for failure to attach certified English translations of the invoices essential to plaintiff's claims); *see also Bejerano v. Flex Fla. Corp.*, 2019 WL 4693508 at *n.1 (S.D. Fla. July 15, 2019) (declining to consider as part of summary judgment hundreds of messages between the parties in Spanish because the parties failed to provide the court with a certified translation as required in all federal court proceedings); *see also U.S. v. Rivera-Rosario,* 300 F.3d 1, 5, 7 n. 4 (1st Cir. 2002)  (noting "well-settled rule that parties are required to translate all foreign language documents into English").  Since Tovarian stipulates to Rubic's certified translation, DE 31 at 28-29, however, I will rely on the translated version Rubic submits.  DE 4-1.

crossing the U.S. border – relevant before the CBP One app), visa assistance, and refers immigrants to ONE immigration attorney, for which they receive a percentage."  DE 4-1 at 2.[3]

Tovarian claims this statement, and the Article in general, defames him by falsely stating that he is engaged in unethical conduct in violation of the law and paying kickbacks to TeachBK for clients in violation of ethical rules governing the legal profession in California.  *Id*.  ¶¶ 16, 26, 29-30.  Tovarian says he lost clients following the Article's publication because it was published in Russian, and his clients are primarily Russian speaking.  *Id*. ¶¶ 21, 35.  The instant action followed.

On December 12, 2023, Tovarian filed suit in Florida's Nineteenth Judicial Circuit against Rubic, Rubic's owner, Kateryna Panova, and a fictitious defendant, "John Doe."  DE 1.  On February 9, 2024, Rubic removed the case from state court to federal court.  *Id*.  On February 13, 2024, Judge Cannon *sua sponte* dismissed the complaint as violating the rule in federal court against fictitious party pleading.  DE 7.  On February 26, 2024, Tovarian filed an Amended Complaint.  DE 10.  On February 28, 2024, Judge Cannon issued an Order to Clarify Subject Matter Jurisdiction, affording Tovarian "one final opportunity to file a second amended complaint clarifying the citizenship of each individual member of the Limited Liability Company Defendant and the amount in controversy."  DE 13 at 3.  On March 11, 2024, Tovarian filed the operative Second Amended Complaint solely against Rubic.  DE 14.

On March 12, 2024, Rubic filed the pending motion to dismiss.  DE 17.  Tovarian filed a response in opposition, DE 24, and Rubic has replied, DE 25. On August 1, 2024, I held oral argument on the Motion, which is now ripe for review.

---

[3] The Complaint alleges the following slightly different translated version of this Article statement: "TeachBK offers immigration advice, a guarantor in the US for money, sells cars to refugees in Mexico (to cross the US border - was relevant before the advent of the CBP One app), visa assistance, and they also send immigrants to **ONE** immigration lawyer, for which they receive a percentage."  DE 14 ¶ 27 (emphasis in original).

## **STANDARD OF REVIEW**

Under Federal Rule of Civil Procedure 12(b)(6), a party may move to dismiss a complaint for failure to state a claim upon which relief can be granted.  When considering such a motion, a court must accept the factual allegations pleaded in the complaint as true and must construe the complaint in the light most favorable to the plaintiff.  *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555–56 (2007); *Jackson v. Bellsouth Telecomms.*, 372 F.3d 1250, 1262 (11th Cir. 2004). However, a plaintiff must plead "enough facts to state a claim to relief that is plausible on its face" so as to "nudge his claims across the line from conceivable to plausible." *Twombly*, 550 U.S. at 570.  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  In determining whether the plausibility standard is met, a court must consider the pleading as a whole and must draw on judicial experience and common sense. *Id.*; *see also Speaker v. U.S. Dept. of Health & Human Services Centers for Disease Control & Prevention*, 623 F.3d 1371, 1380 (11th Cir. 2010) (citations omitted).  Courts are not "bound to accept as true a legal conclusion couched as a factual allegation."  *Papasan v. Allain*, 478 U.S. 265, 286 (1986).

A plaintiff need not detail all the facts on which his claim is based; rather, Rule 8(a)(2) requires only a short and plain statement that fairly notifies the defendant of what the claim is and the grounds on which it rests.  *Twombly*, 550 U.S. at 555-56; *Randall v. Scott*, 610 F.3d 701, 705 (11th Cir. 2010).  The allegations must, however, be enough to raise a right to relief above the speculative level.  *Id*.  The Federal Rules demand "more than an unadorned, the-defendant-unlawfully-harmed-me-accusation." *Iqbal*, 556 U.S. at 662.  "Mere 'labels and conclusions or a formulaic recitation of the elements of a cause of action will not do,' and a plaintiff cannot rely on

'naked assertions devoid of further factual enhancement.'" *Franklin v. Curry*, 738 F.3d 1246, 1251 (11th Cir. 2013) (citation omitted). "[I]f allegations are indeed more conclusory than factual, then the court does not have to assume their truth." *Chaparro v. Carnival Corp.*, 693 F.3d 1333, 1337 (11th Cir. 2012).

While courts are generally limited to the facts contained in the complaint and accompanying exhibits when analyzing a motion to dismiss, *Wilchombe v. TeeVee Toons, Inc.*, 555 F.3d 949, 958 (11th Cir. 2009), courts may consider an extrinsic document if it is (1) central to the plaintiff's claim, and (2) its authenticity is not challenged. *SFM Holdings, Ltd. v. Banc of Am. Secs., LLC*, 600 F.3d 1334, 1337 (11th Cir. 2010); *see also Maxcess, Inc. v. Lucent Techs., Inc.*, 433 F.3d 1337, 1340 n.3 (11th Cir. 2005) ("[A] document outside the four corners of the complaint may still be considered if it is central to the plaintiff's claims and is undisputed in terms of authenticity."). Here, Plaintiff attaches the Article to his Complaint. It is in the Russian language and is also available online at https://rubic.us/otzyvy-o-teachbk-moshenniki-prodayut-kradennye-mashiny-shantazhiruyut/ (last accessed November 13, 2024). I will consider the Article and its corresponding certified translation, DE 4-1, in addressing Defendant's Motion as this evidence is central to Plaintiff's defamation claim and its authenticity is not challenged. *SFM Holdings, Ltd.*, 600 F.3d at 1337.

## ANALYSIS

In the pending Motion, Rubic argues (1) California law applies to Tovarian's claims; (2) the defamatory statement is not "of and concerning" Tovarian; (3) Tovarian is a limited public figure and the Complaint fails to plead actual malice; and (4) Rubic is entitled to attorney's fees

under either Florida or California's anti-SLAPP statute.[4]   DE 17.   Below I will address each argument in turn.

### A.      Florida Law Applies to Tovarian's Defamation Claim.

Rubic argues that California law should apply to Tovarian's defamation claim.   DE 17 at 6.   Tovarian responds that there is no conflict between Florida and California law, and thus Florida law governs.   DE 24 at 5.

In the Eleventh Circuit, a federal court sitting in diversity will apply the conflict of law rules of the forum state based on the particular legal issues in the case.   *Nix v. ESPN, Inc.*, 772 F. App'x 807 (11th Cir. 2019) (citing *Grupo Televisa, S.A. v. Telemundo Commc'ns Grp., Inc.*, 485 F.3d 1233, 1240 (11th Cir. 2007)).   Before beginning a conflict of law analysis, however, a court should determine whether a legal conflict truly exists.   *Fioretti v. Mass. Gen. Life Ins. Co.,* 53 F.3d 1228, 1234–35 (11th Cir.1995).   "A true conflict exists when 'two or more states have a legitimate interest in a particular set of facts in litigation and the laws of those states differ or would produce a different result.'"   *Pycsa Panama, S.A. v. Tensar Earth Techs., Inc.*, 625 F. Supp. 2d 1198, 1219 (quoting *Walker v. Paradise Grand Hotel, Ltd.,*  2003 WL 21361662, *2-3 (S.D. Fla. Apr. 25, 2003)).   In contrast, when the laws of the various states or the outcome thereunder do not conflict, the asserted conflict is a false one.   *Tune v. Phillip Morris, Inc.*, 766 So. 2d 350, 352 (Fla. 2d DCA 2000).   A "false conflict" exists when the laws of the interested jurisdictions are: "(1) the same,

---

[4]  Without argument or support, Rubic also contends that the at-issue statements and Article are not defamatory.   DE 17 at 6.   In Florida, "a communication is 'defamatory' if it tends to harm the reputation of another as to lower him or her in estimation of community or deter third persons from associating or dealing with the defamed party."   *Starkes v. Flechner*, 2012 WL 718661 (S.D. Fla. Mar. 6, 2012) (citing *LRX, Inc. v. Horizon Associates Joint Venture ex rel. Horizon-ANF, Inc.*, 842 So. 2d 881 (Fla. 4th DCA 2003)).   Here, the Article's statements are defamatory because they allege that Tovarian pays a percentage of his fees to TeachBK, which insinuates "a direct violation of [his] law license."   DE 14 ¶ 30.   Moreover, the Article suggests TeachBK "controls" Tovarian, uses immigrants' confidence in him as an attorney to lure clients to be scammed by TeachBK, and threatens those whom TeachBK has unscrupulously harmed with legal action.   DE 4-1 at 8-9.   These statements are unquestionably defamatory.

(2) different but would produce the same outcome under the facts of the case, or (3) [] the policies of one state would be furthered by the application of its laws while the policy of the other state would not be advanced by the application of its laws." *Doe v. Roe, 20-14456*, 2022 WL 1447378 at *3 (11th Cir. May 9, 2022) (citing *Tune*, 766 So. 2d 350 at 352). If only a "false conflict" is present, the law of the forum state governs. *See Cavic v. Grand Bahama Dev. Co.*, 701 F.2d 879, 882 (11th Cir. 1983).

Here, there is no true conflict between Florida and California defamation law. Thus, the law of Florida—as forum state—governs. In Florida, the elements of a defamation claim are: (1) publication; (2) falsity; (3) the actor acts with knowledge or reckless disregard as to the falsity on a matter concerning a public official, or at least negligently on a matter concerning a private person; (4) actual damages; and (5) the statement must be defamatory. *Jews for Jesus, Inc. v. Rapp,* 997 So.2d 1098, 1106 (Fla. 2008). In California, "the elements of defamation are: (1) a publication that is (2) false, (3) defamatory, (4) unprivileged, and (5) has a natural tendency to injure or causes special damage." *Lemus v. Visalia Police Dep't*, 124CV00050JLTHBK, 2024 WL 813774 at *3 (E.D. Cal. Feb. 27, 2024) (citing *Price v. Operating Engineers Local Union No. 3*, 195 Cal. App. 4th 962, 970 (2011)). California courts have adopted a negligence standard for private figure plaintiffs and an actual malice standard for public figure plaintiffs. *Hernandez v. Avis Budget Grp., Inc.*, 2017 WL 6406838 at *6 (E.D. Cal. Dec. 15, 2017) (citing *Khawar v. Globe Int'l, Inc.*, 19 Cal. 4th 254, 274-275 (1998), as modified (Dec. 22, 1998)).

The legal elements of a defamation claim in Florida and California are the same. Both forums require publication, falsity, that the plaintiff suffered damages, and that the statement be defamatory. Further, both identify negligence as the standard for statements pertaining to private individuals, and actual malice as the standard for matters relating to public officials or public

figures. *See Krinsky v. Doe 6*, 159 Cal. App. 4th 1154, 1173 (2008) (quoting *Wolfson v. Kirk*, 273 So.2d 774, 776 (Fla. Dist. Ct. App. 1973)) ("In Florida, as in California, defamation consists of 'an unprivileged publication of false statements which naturally and proximately result in injury to another.'"). Thus, there is no conflict and Florida's defamation law applies.[5]

**B.**   **The Complaint Adequately Alleges that the Article's Defamatory Statements are about Tovarian.**

Next, I must determine if the Complaint plausibly alleges that the defamatory statements are "of and concerning" Tovarian. *Parekh v. CBS Corp.*, 820 F. App'x 827, 832 (11th Cir. 2020) ("[A] defamatory statement must be 'of and concerning' the plaintiff to be actionable."); *see also Ludwin v. Proman*, 2023 WL 2401774 at *4 (S.D. Fla. Jan. 24, 2023) (dismissing defamation claim against a law firm where alleged defamatory statements were only of and concerning the named partner of the firm and not the firm itself) (citing *McIver v. Tallahassee Democrat, Inc.*, 489 So. 2d 793, 793-794 (Fla. 4th DCA 1986)). There is no strict requirement in Florida that an allegedly defamed person be named in a publication for the statement to be actionable. *See Wolfson v. Kirk*, 273 So. 2d 774, 779 (Fla. 4th DCA 1973). However, Florida courts have long held that if a defamed person is not named in the defamatory publication, "the communication as a whole [must] contain[ ] sufficient facts or references from which the injured person may be determined by the persons receiving the communication." *Id*. (citing *O'Neal v. Trib. Co.*, 176 So. 2d 535, 548 (Fla. 2d DCA 1965)); *Harwood v. Bush*, 223 So. 2d 359, 362 (Fla. 4th DCA 1969); *see also Zimmerman v. Buttigieg*, 521 F.Supp.3d 1197, 1213 (M.D. Fla. 2021) ("[A] tortfeasor could juxtapose a series of facts in such a way that a specific person is identifiable even though that person's name has not been used."). The relevant inquiry is whether "the average person upon reading [the] statements

---

[5] Although Rubic argued in the Motion that California law applies, it conceded at oral argument that there is no conflict between Florida and California law, and Florida law should apply in this instance. DE 31 at 9.

could reasonably have concluded that the plaintiff [ ] was implicated[.]" *Miami Herald Pub. Co. v. Ane*, 423 So. 2d 376, 389 (Fla. 3d DCA 1982), aff'd, 458 So. 2d 239 (Fla. 1984).

Here, the Article unquestionably concerns Tovarian, by name and by implication.  The Article starts by explaining how TeachBK harms Russian immigrants:

- TeachBK "send[s] immigrants to ONE immigration lawyer, for which they receive a percentage."  DE 14 ¶ 27; DE 4-1 at 2.

- "Unfortunately, many TeachBK clients fail to realize they are dealing with scammers and inadvertently become part of criminal activity by purchasing their services."  DE 4-1 at 2.

- "Many immigrants … are unaware that in the U.S. only licensed attorneys can provide immigration services, … and attorneys cannot pay for clients using Russian cards."  *Id.*

- "For each consultation, there's money involved.  $200 for a consultation, $50 goes to us.  Then a lawyer gets involved.  We pass people through ourselves, so we can control the lawyer.   The lawyer 'spits out' some percentage to us for referring clients.  And that's how the entire route is monetized.  First – for consultations, then – for lawyers…."  *Id.* at 8.

The Article goes on to specifically identify Tovarian as a lawyer with whom TeachBK works:

- [A]ccording to information available publicly, the Russian speaking lawyer Aleksey Tovaryan has been collaborating with TeachBK for over 2 years.  He records videos for their 'Immigration US' channel on YouTube, participates in hours-long live streams, makes short video clips, gives consultations and recommendations, and gets people to trust the company. *Id.* at 9.

Next, the Article includes a photograph of Tovarian with the caption "Attorney Tovaryan Publicly Represents the TeachBK Brand."  *Id.*  The Article says victims seek services from TeachBK precisely because it associates with Tovarian.  *Id.* (noting that one victim "turned to this company because they collaborate with a U.S. citizen, a licensed attorney, Aleksey Tovaryan.  She

was confident that a lawyer would not risk his license or reputation.  Another victim also said that after studying numerous Teach BK channels for over a month, it was the video consultations of the attorney that convinced him.").  The Article also claims Tovarian "received messages from those harmed by TeachBK's actions" and responded by threatening them with legal action.  DE 4 at 9-10.  *Id.*  These statements, if false, are defamatory.

Rubic argues that the alleged defamatory statement referenced in the Complaint mentions "ONE attorney" and does not refer to Tovarian by name or clear implication.  But, as previously shown, Tovarian's name is mentioned multiple times elsewhere the Article.   Rubic also contends Tovarian cannot show the statement is about him because it pertains to fees TeachBK receives.  Inexplicably, Rubic asserts that "[n]othing in the re-translated statement, certified translation provided by Rubic, or Article suggest that <u>Plaintiff</u> is paying a kickback…" DE 17 at 9.   This assertion is simply untrue.  The Article unquestionably implicates Tovarian specifically as a lawyer who works with TeachBK, gets people to trust the company, pays a fee for clients referred, and threatens legal action against those TeachBK has harmed. Plaintiff has adequately alleged this element of his defamation claim.

### C.     The Complaint Adequately Alleges Facts Showing Actual Malice.

"The test for determining liability in a defamation case turns on whether the libeled party is a public or private figure and on whether the defamatory publication addresses a public or private concern."  *Silvester v. Am. Broad. Cos., Inc.*, 839 F.2d 1491, 1493 (11th Cir. 1988).  "If the injured party is a public figure or official and the defamatory material involves issues of legitimate public concern, the plaintiff must prove that the defendant acted with actual malice to establish liability."  *Id.* (citations omitted).   To establish actual malice, the plaintiff must "show that defendants

published the defamatory material with a high degree of awareness of its probable falsity." *Id.* (quotation marks and citation omitted).

For purposes of a defamation lawsuit under Florida law, public figure status "is a question of law to be determined by the court." *Mile Marker, Inc. v. Petersen Publ'g, LLC*, 811 So.2d 841, 845 (Fla. 4th DCA 2002) (quoting *Saro Corp. v. Waterman Broad. Corp.*, 595 So.2d 87, 89 (Fla. 2d DCA1992)). There are two types of public figures, "general" or "limited." *Saro Corp.*, 595 So.2d at 89. General public figures are individuals who, by reason of fame or notoriety in a community, will in all cases be required to prove actual malice. *Id.* Limited public figures, on the other hand, are individuals who have thrust themselves forward in a particular public controversy and are therefore required to prove actual malice only in regard to certain issues. *Id.* (citing *Gertz v. Robert Welch, Inc.*, 418 U.S. 323 (1974)).

Rubic argues that Tovarian is a limited public figure because the case involves a public controversy (specifically, that TeachBK was scamming Russian and Ukrainian immigrants in the wake of the Russian invasion of Ukraine) and therefore Tovarian must plead facts showing actual malice to survive a motion to dismiss. DE 17 at 10-14. While not conceding that he is a limited public figure,[6] Tovarian respond that the Complaint alleges facts satisfying the actual malice standard. I agree.

The *Twombly/Iqbal* "plausibility pleading standard applies to the actual malice standard in defamation proceedings." *Michel v. NYP Holdings, Inc.*, 816 F.3d 686, 702 (11th Cir. 2016). Thus, to plead actual malice, Plaintiff "must allege facts sufficient to give rise to a reasonable inference that the false statement was made 'with knowledge that it was false or with

---

[6] The Complaint alleges that Tovarian is a private individual who has not taken on the role of a public official or public figure. DE 14 ¶ 5. It also alleges that "false statements were made intentionally and with malice by Rubic to damage the Plaintiff and for the purpose of pecuniary gain." *Id.* ¶ 22.

reckless disregard of whether it was false or not.'" *Id.* (quoting *Sullivan*, 376 U.S. at 280). This is a subjective test, focusing on whether the defendant "actually entertained serious doubts as to the veracity of the published account, or was highly aware that the account was probably false." *Id.* at 702-03.

Here, Tovarian alleges facts plausibly showing actual malice. The Complaint asserts that Rubic's agent reached out to Tovarian to ask if he would be interested in a movie being produced about his practice. After the Article was published, Tovarian was told that the Article might be taken down if Tovarian agreed to associate with Rubic. DE 14 ¶ 23. The Complaint also alleges that Tovarian declined multiple requests from Rubic to be part of Rubic's program. *Id.* ¶ 11. Assuming as true that Rubic was willing to remove the allegedly defamatory statements if Tovarian agreed to participate in its movie or be part of its program, a reasonable inference may be drawn that Rubic entertained doubts about the truthfulness of the Article's statements concerning Tovarian. This suggests the defamatory statements were knowingly or recklessly made at or around a time when Defendant was aware of their probable falsity, which is sufficient at this juncture to demonstrate actual malice.

To rebut Plaintiff's assertion of actual malice, Rubic's Motion relies on significant information from outside the four corners of the Complaint. For example, Rubic relies upon a declaration from TeachBK source, Maksim Kharitonov, claiming Kharitonov received an audio recording from Ilya Kiselev, one of TeachBK's founders, that supports the truth of statements made in the Article. DE 5. Rubic also submits a WhatsApp voice message audio recording that is in Russian and a certified translation of Kiselev's comments. *Id*. Consideration of matters beyond the Complaint and its exhibits, however, is improper in the context of a motion to dismiss. *Milburn v. U.S.*, 734 F. 2d 762, 765 (11th Cir. 1984). At the motion-to-dismiss stage, challenging

the substantive merits or presenting outside facts to challenge the legal claims is not appropriate. *Ventrassist PTY, Ltd. v. Heartware Inc.*, 377 F. Supp. 2d 1278, 1285 (S.D. Fla. 2005) ("The purpose of a motion to dismiss under Rule 12(b)(6) 'is to test the formal sufficiency of the statement of the claim for relief; the motion is not a procedure for resolving a contest between the parties about the facts or the substantive merit of the plaintiff's case.'"). I questioned Rubic's counsel extensively on this point at oral argument, and he was unable to provide any cases in the defamation context that would allow me to consider this extraneous evidence on a motion to dismiss. DE 31 at 6, 14-18.[7] Thus, I respectfully recommend that Rubic's motion to dismiss is due to be denied. Consequently, because Rubic has failed to carry its burden that the defamation claim should be dismissed, their argument at this stage that Tovarian has violated any anti-SLAPP statute entitling Rubic to fees is unconvincing and should likewise be denied. *See Romspen Inv. LP v. Dibert*, 2024 WL 3673034, at *4 (S.D. Fla. Aug. 6, 2024).

## CONCLUSION

Based on the foregoing, I respectfully **RECOMMEND** that the Motion to Dismiss and for Award of Attorney's Fees, DE 17, be **DENIED** in its entirety.

## NOTICE OF RIGHT TO OBJECT

The parties shall have fourteen (14) days from the date of being served with a copy of this Report and Recommendation within which to file written objections, if any, with U.S. District Judge Aileen M. Cannon. Failure to file objections timely shall bar the parties from a *de novo* determination by the District Judge of an issue covered in the Report and Recommendation and

---

[7] At oral argument, Rubic's counsel cited two cases, neither of which allows me to consider the extraneous evidence provided by Rubic at this motion-to-dismiss stage. *Fortson v. Colangelo*, 434 F.Supp.2d 1369 (S.D. Fla. 2006) (in *summary judgment* context, evaluating extraneous evidence concerning alleged claims of libel and slander brought by a professional basketball player); *From v. Tallahassee Democrat, Inc.,* 400 So.2d 52 (Fla. 1st DCA 1981) (state appellate court affirmance of a dismissed libel action against newspaper based on an evaluation of the statements in the underlying complaint and an article that was part of the complaint).

shall bar the parties from attacking on appeal unobjected-to factual and legal conclusions contained in this Report and Recommendation. *See* 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140, 149 (1985); *Henley v. Johnson*, 885 F.2d 790, 794 (11th Cir. 1989); 11th Cir. R. 3-1 (2016). **Conversely, if a party does not intend to object to this Report and Recommendation, then that party shall file a Notice of such within five (5) days of the date of this Report and Recommendation.**

**DONE AND RECOMMENDED** in Chambers at Fort Pierce, Florida, this 13th day of November, 2024.

SHANIEK MILLS MAYNARD
U.S. MAGISTRATE JUDGE

14