UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
FORT PIERCE DIVISION

CASE NO. 24-14037-CIV-CANNON/Maynard

**ALEKSEY TOVARIAN**,

    Plaintiff,

v.

**RUBIC, LLC**,

    Defendant.
_____/

## ORDER ACCEPTING IN PART MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION [ECF No. 32]

**THIS CAUSE** comes before the Court upon Defendant's Motion to Dismiss Plaintiff's Second Amended Complaint (the "Motion") [ECF Nos. 14, 17].  The Motion was referred to Magistrate Judge Shaniek M. Maynard for a report and recommendation [ECF No. 28].  Magistrate Judge Maynard heard argument on the Motion [ECF Nos. 30, 31] and subsequently issued a report recommending that Defendant's Motion be denied (the "Report") [ECF No. 32].  Defendant filed Objections to the Report [ECF No. 34].[1]  The Court has reviewed the Report [ECF No. 28], Defendant's Objections [ECF No. 34], and the full record.  For the reasons set forth below, the Report [ECF No. 32] is **ACCEPTED IN PART**, and the Motion [ECF No. 17] is **DENIED**, consistent with this Order.

### RELEVANT BACKGROUND

This case arises out of an allegedly defamatory article entitled "New Scammers on the U.S.-Mexico Border"—an exposé on companies that take advantage of Eastern Europeans who

---

[1] Plaintiff filed a Notice of No Objection to the Report [ECF No. 35].

are looking to immigrate to the United States [ECF No. 4-1 p. 1]. Plaintiff alleges that Defendant published the defamatory article on its website—a blog for Russian-speaking immigrants about the immigration process and life in the United States [ECF No. 14 ¶ 13]. The article claims that Plaintiff has a deal with a company, TeachBK, whereby it sends him immigration clients, and in return, Plaintiff sends TeachBK a portion of the legal fees he receives from those clients [ECF No. 14 ¶ 13]. Specifically, the pertinent excerpts of the Article are as follows:

- "TeachBK offers immigration consultations, paid sponsors in the U.S., sells cars to asylum seekers in Mexico (for crossing the U.S. border – relevant before the CBP One app), visa assistance, and refers immigrants to ONE immigration attorney, for which they receive a percentage" [ECF No. 4-1 p. 2].

- "For each consultation, there's money involved. $200 for a consultation, $50 goes to us. Then a lawyer gets involved. We pass people through ourselves, so we control the lawyer. The lawyer 'spits out' some percentage to us for referring clients. And that's how the entire route is monetized. First – for consultations, then – for lawyers, and possibly, for adaptation consultations – we have those too. This way we create a service... a whole branch," explains Ilya Kiselev to his interlocutor" [ECF No. 4-1 p. 8].

- "But according to information available publicly, the Russian-speaking lawyer Aleksey Tovaryan has been collaborating with TeachBK for over 2 years. He records videos for their 'Immigration US' channel on YouTube, participates in hours-long live streams, makes short video clips, gives consultations and recommendations, and gets people to trust the company" [ECF No. 4-1 p. 9].

Plaintiff alleges that, given his profession as an immigration lawyer for Russian speakers, this publication suggests that he is violating California's ethical rules for the legal profession and that Defendant was "intending to target [his] Russian and Eastern European clientele to hinder [his] ability to market his services . . . ." [ECF No. 14 ¶¶ 3, 9, 15].

In December 2023, Plaintiff sued Defendants Rubic, LLC, Kateryna Panova, the publication's owner, and John Doe in Florida's Nineteenth Judicial Circuit for defamation [ECF No. 1]. After removal, this Court dismissed Plaintiff's original Complaint on fictitious-party pleading grounds [ECF Nos. 3, 7]. Plaintiff then filed the First Amended Complaint, removing

CASE NO. 24-14037-CIV-CANNON/Maynard

John Doe from the suit [ECF No. 9], after which Defendants Rubic and Panova moved to dismiss [ECF No. 10]. Plaintiff then filed the operative, Second Amended Complaint, alleging a single count of defamation against Defendant Rubic, LLC alone [ECF No. 14]. Defendant later filed the instant Motion seeking dismissal under Rule 12(b)(6) [ECF No. 17]. *See* Fed. R. Civ. P. 12(b)(6). The Motion and the Report and Recommendation on the Motion are ripe for adjudication [ECF Nos. 17, 31, 32, 34].

## LEGAL STANDARDS

To challenge the findings and recommendations of a magistrate judge, a party must file specific written objections identifying the portions of the proposed findings and recommendation to which objection is made. *See* Fed. R. Civ. P. 72(b)(3); *Heath v. Jones*, 863 F.2d 815, 822 (11th Cir. 1989); *Macort v. Prem, Inc.*, 208 F. App'x 781, 784 (11th Cir. 2006). A district court reviews de novo those portions of the report to which objection is made and may accept, reject, or modify in whole or in part, the findings or recommendations made by the magistrate judge. 28 U.S.C. § 636(b)(1). To the extent a party fails to object to parts of the magistrate judge's report, the Court may accept the recommendation so long as there is no clear error on the face of the record. *Macort*, 208 F. App'x at 784. Legal conclusions are reviewed de novo, even in the absence of an objection. *See LeCroy v. McNeil*, 397 F. App'x 554, 556 (11th Cir. 2010); *Cooper-Houston v. S. Ry. Co.*, 37 F.3d 603, 604 (11th Cir. 1994).

To avoid dismissal under Rule 12(b)(6), a complaint must allege facts that, if accepted as true, "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *see* Fed. R Civ. P. 12(b)(6). A claim for relief is plausible if the complaint contains factual allegations that allow "the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "The plausibility

3

standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (quoting *Twombly*, 550 U.S. at 545). Conclusory allegations, unwarranted deductions of facts or legal conclusions masquerading as facts will not prevent dismissal. *Oxford Asset Mgmt., Ltd. v. Jaharis*, 297 F.3d 1182, 1188 (11th Cir. 2002).

## DISCUSSION

The Report concludes that Plaintiff's Second Amended Complaint plausibly states a claim for defamation, warranting denial of Defendant's Motion to Dismiss [ECF No. 32]. In doing so, the Report determines that Plaintiff has adequately alleged that the challenged defamatory statements concern Plaintiff [ECF No. 32 p. 9]. The Report then determines—without deciding whether Plaintiff is a private figure, limited public figure, or public figure—that the Second Amended Complaint satisfies the heightened actual malice standard required to prove defamation against public figures and limited public figures [ECF No. 32 pp. 11–12]. More generally, the Report declines Defendant's request to consider matters beyond the Second Amended Complaint and its exhibits in adjudicating the Motion [ECF No. 32 pp. 12–13 (noting Defendant's reliance on extrinsic materials, including a declaration from Defendant's alleged source supporting purported truth of statements in article)].

Defendant objects to the Report on two grounds. First, Defendant reasserts its position that the Court should consider matters extrinsic to the pleading in determining whether Defendant believed the subject statements were true when made [ECF No. 34 p. 2]. Second, Defendant argues that the Report should have disregarded Plaintiff's current allegations about Defendant's purported actual malice, because those allegations differ from allegations in Plaintiff's earlier First Amended Complaint with respect to Defendant's refusal to take down the article [ECF No. 34 p. 2; *see* ECF No. 25 p. 2]. Overall, Defendant continues to challenge the adequacy of Plaintiff's

4

allegations to support actual malice as would be required to prove defamation against a public figure or limited public figure.

Upon de novo review of the Report and the full record, the Court agrees with the Report that Plaintiff's Second Amended Complaint plausibly states a claim for defamation under the relevant standards for private figures. Plaintiff alleges that he is a private figure [ECF No. 14 ¶ 5], and the Court therefore accepts Plaintiff's private-figure-status as true at this stage. The Court also concurs with the Report that final determination in this case of Plaintiff's private-or-public status may be addressed on summary judgment. The Court disagrees, however, with the Report's conclusion that Plaintiff's allegations are sufficient to plead actual malice.

In Florida, a defamation claim has "five elements: (1) publication; (2) falsity; (3) actor must act with knowledge or reckless disregard as to the falsity on a matter concerning a public official, or at least negligently on a matter concerning a private person; (4) actual damages; and (5) statement must be defamatory." *Jews For Jesus, Inc. v. Rapp*, 997 So. 2d 1098, 1106 (Fla. 2008).[2] For plaintiffs who are public figures, actual malice is required. *New York Times Co. v. Sullivan*, 376 U.S. 254, 279–80 (1964). To plead actual malice, a plaintiff must allege facts sufficient to give rise to a reasonable inference that the false statement was made "with knowledge that it was false or with reckless disregard of whether it was false or not." *Sullivan*, 376 U.S. at 280. There must be sufficient facts, viewed in the light most favorable to Plaintiff, that demonstrate that the "defendant, instead of acting in good faith, actually entertained serious doubts

---

[2] Defendant previously argued that California law rather than Florida law applies to Plaintiff's defamation claim [ECF No. 17 p. 6] but then conceded application of Florida law during oral argument [ECF No. 31 p. 9]. Defendant raises no challenge to the Report's application of Florida law [*see* ECF No. 34].

5

as to the veracity of the published account, or was highly aware that the account was probably false." *Michel v. NYP Holdings, Inc.*, 816 F.3d 686, 703 (11th Cir. 2016).

Determining whether a plaintiff is a public figure or a limited public figure is a question of law for the court. *Mile Marker, Inc. v. Petersen Publ'g, L.L.C.*, 811 So. 2d 841, 845 (Fla. Dist. Ct. App. 2002) (stating that public figure status "is a question of law to be determined by the court") (quoting *Saro Corp. v. Waterman Broad. Corp.*, 595 So. 2d 87, 89 (Fla. Dist. Ct. App. 1992)). "General public figures are individuals who, by reason of fame or notoriety in a community, will in all cases be required to prove actual malice. Limited public figures, on the other hand, are individuals who have thrust themselves forward in a particular public controversy and are therefore required to prove actual malice only in regard to certain issues." *Turner v. Wells*, 879 F.3d 1254, 1272 (11th Cir. 2018) (internal citations omitted).

First, as the Report correctly concludes, the Court need not reach a final determination at this stage on the legal question whether Plaintiff is a limited public figure or a private person. Plaintiff's Second Amended Complaint alleges that he is a private person who has not taken on the role of a public or limited-public figure [ECF No. 14 ¶¶ 4–5, 33]. The Court must accept Plaintiff's allegations as true at this stage and construe them in Plaintiff's favor. *Twombly*, 550 U.S. at 555–56. And while Defendant's extrinsic materials may suggest otherwise, Plaintiff may maintain his status as a private person as alleged for purposes of the instant Motion.

Second, although Plaintiff need not plead actual malice in order to deny the Motion given Plaintiff's alleged status as a private person, the Court disagrees with the Report that Plaintiff's Second Amended Complaint pleads actual malice. The Report relies on the fact that Defendant asked Plaintiff to form a business relationship and "was willing to remove the allegedly defamatory statements if [Plaintiff] agreed to participate in its movie or be part of its program" [ECF No. 32

p. 12]. The Report reasons that, because of this offer, it is plausible to infer that Defendant "entertained doubts about the truthfulness of the Article's statements" [ECF No. 31 p. 12 ("Assuming as true that Rubic was willing to remove the allegedly defamatory statements if Tovarian agreed to participate in its movie or be part of its program, a reasonable inference may be drawn that Rubic entertained doubts about the truthfulness of the Article's statements concerning Tovarian. This suggests the defamatory statements were knowingly or recklessly made."). The Court respectfully disagrees with this analysis. The Court does not see how Defendant's offer to take down the subject article in exchange for participation in a given business deal with Plaintiff—without more—plausibly gives rise to an inference of known falsity. While perhaps unethical, using negative commentary as a bargaining chip for business arrangements does not plausibly lead to the inference that such commentary is knowingly or recklessly false, at least not without some additional fact supporting a defendant's actual doubts about the truth of the statements involved or knowledge of their probable falsity. The Second Amended Complaint is devoid of facts that support one interpretation over any other. While not dispositive for the instant Motion, upon de novo review, the Court concludes that Plaintiff has not successfully pled actual malice. No further amendments of Plaintiff's pleading will be permitted given the numerous opportunities to amend already afforded in this action [ECF Nos. 1, 9, 14].[3]

---

[3] In light of the Court's ruling, the Court need not resolve Defendant's contention (raised for the first time in Reply [ECF No. 25]), that Plaintiff's allegations in the operative Second Amended Complaint should not be taken as true because they were altered after two opportunities to replead [ECF No. 34 p. 2]. Specifically, Defendant argues that, in Plaintiff's initial Complaint, Plaintiff alleged that "Rubic's owner Kateryna Panova told him that 'she was not going to take the article down because she is relying on an anonymous source. [She] refused to provide the anonymous source'" [ECF No. 34 p. 4]. Now, in the operative Complaint, Plaintiff "states that Rubic offered to take down the article if Plaintiff agreed to advertise with Rubic" [ECF No. 34 p. 4]. These allegations, Defendant maintains, are so contradictory to warrant this Court's disregard of Plaintiff's current operative pleading [ECF No. 34 p. 4]. Without prejudice to re-raising this theory on summary judgment, if still relevant, the Court sees no basis to disregard Plaintiff's

Accordingly, following de novo review, the Court accepts the Report insofar as Plaintiff adequately states a claim for defamation against private persons and rejects the Report's conclusion that Plaintiff has pled actual malice. The determination of whether Plaintiff is a limited-purpose public figure is deferred to summary judgment.

### CONCLUSION

It is **ORDERED AND ADJUDGED** as follows:

1. The Report and Recommendation [ECF No. 32] is **ACCEPTED IN PART**, consistent with this Order.[4]

2. Defendant's Motion to Dismiss Plaintiff's Second Amended Complaint [ECF No. 17] is **DENIED**, consistent with this Order.

3. On or before **March 24, 2025**, Defendant shall file an Answer to Plaintiff's Second Amended Complaint [ECF No. 14], consistent with this Order.

**ORDERED** in Chambers at Fort Pierce, Florida, this 10th day of March 2025.

AILEEN M. CANNON
UNITED STATES DISTRICT JUDGE

cc:   counsel of record

---

allegations as pled in the current complaint. A plaintiff may choose to replead as he sees fit, consistent with the federal and local rules of civil procedure and the guidance provided by this Court in its previous Orders [ECF Nos. 7, 13]. The Court will review the record as a whole on summary judgment.

[4] The Court also accepts the Report's corresponding determination that assessment of attorneys' fees is premature at this stage [ECF No. 32 p. 13].